KELLY, J.
(dissenting). The Court heard oral argument in these cases along with People v McCuller, which was on remand to us from the United States Supreme Court. Michigan v McCuller,_US_; 127 S Ct 1247 (2007). My dissenting opinion in McCuller contains my most thorough analysis of the application of the Sixth Amendment[1] to the Michigan sentencing guidelines.[2] People v McCuller, 479 Mich 672; 739 NW2d 563 (Docket No. 128161, decided July 26, 2007). For a full understanding of the issues involved, I urge the reader to turn to my dissent in that case.
With respect to Burns, this Court should not even reach the constitutional issue. The trial court failed to articulate substantial and compelling reasons to exceed *647 the range set by the sentencing guidelines. Because of this, defendant Jesse Burns is entitled to resentencing, irrespective of the constitutional issue.
In Harper, the majority continues to exempt Michigan from the Sixth Amendment precedent set by the United States Supreme Court in Jones v United States[3] and its progeny. However, it is clear to me that the judicial fact-finding that took place in Harper violated Bernard Harper’s Sixth Amendment right to a trial by jury. In fact, the violation is even clearer than the violation in McCuller. Michigan’s sentencing guidelines are unconstitutional as applied. I would vacate the sentence and remand the case to the trial court for resentencing in a manner that conforms to the Sixth Amendment.
I. PEOPLE v BURNS
A. PROCEDURAL FACTS
In July 2002, Burns pleaded guilty of attempted breaking and entering. MCL 750.110; MCL 750.92. It is undisputed that the guidelines range for his minimum sentence was zero to 11 months. This range falls in what is properly referred to as an intermediate sanction cell. MCL 769.34(4) (a) creates these cells. It provides:
If the upper limit of the recommended minimum sentence range for a defendant determined under the sentencing guidelines set forth in chapter XVII is 18 months or less, the court shall impose an intermediate sanction unless the court states on the record a substantial and compelling reason to sentence the individual to the jurisdiction of the department of corrections. An intermediate sanction may include a jail term that does not exceed the upper limit of the recommended minimum sentence range or 12 months, whichever is less.
*648 Pursuant to MCL 769.31(b), one possible intermediate sanction is probation. The trial court in this case chose that option and sentenced Bums to three years’ probation.
In 2005, the court found, by a preponderance of the evidence, that Burns had violated his probation. At sentencing, the court noted that the original range had been zero to 11 months.[4] But it decided to exceed the range given in the intermediate sanction cell and not impose an intermediate sanction. It sentenced Burns to V-fe to 5 years in prison.
Because the court did not impose an intermediate sanction as a sentence, it had to articulate a substantial and compelling reason for the departure. MCL 769.34(4)(a). The court completed a sentencing information report departure evaluation form stating its reason:
The original SGL of 0-llmonths [sic] fails to consider his violation behavior — which constitutes a substantial and compelling reason for a moderate departure from this range.
No additional reasons were given.
B. SUBSTANTIAL AND COMPELLING REASONS FOR THE GUIDELINES DEPARTURE
The trial court’s statement in support of its departure does not constitute a substantial and compelling reason to exceed the sentencing guidelines range.
The phrase “substantial and compelling reason” has, in our judgment, acquired a peculiar and appropriate meaning in the law and, thus, it must be construed according to *649 such meaning. That is, a “substantial and compelling reason” must be construed to mean an “objective and verifiable” reason that “ ‘keenly’ or ‘irresistibly’ grabs our attention”; is “of ‘considerable worth’ in deciding the length of a sentence”; and “exists only in exceptional cases.” [People v Babcock, 469 Mich 247, 257-258; 666 NW2d 231 (2003), quoting People v Fields, 448 Mich 58, 62, 67-68; 528 NW2d 176 (1995).]
Whether a reason for departure is objective and verifiable is a question of law subject to review de novo. Babcock, 469 Mich at 265.
In this case, the court relied solely on Burns’s postprobation conduct to exceed the guidelines range. A sentencing court may consider postprobation conduct when determining whether substantial and compelling reasons exist to depart upward. But the fact that probation was violated does not automatically constitute a substantial and compelling reason. People v Hendrick, 472 Mich 555, 562-563; 697 NW2d 511 (2005). The trial court’s statement on the departure evaluation form does not satisfy Hendrick’s requirement.
By simply referring to Burns’s “violation behavior,” the court did nothing more than repeat the fact that Burns had violated the terms of his probation. The statement did not explain why his behavior separated Burns from the typical probation violator. It did not explain why this particular departure was warranted, or why this is an “exceptional case[]” warranting a departure. Babcock, 469 Mich at 258. And it said nothing about why this case should “keenly or irresistibly” seize our attention. Id. Without such detail, the stated reason for departure is insufficient. Id.; Hendrick, 472 Mich at 563. And Burns must be remanded to the trial court for resentencing. MCL 769.34(11).
The majority turns to the sentencing transcript to bolster the trial court’s stated reason for departure. *650 This is inappropriate. A reviewing court may not search the record to find its own substantial and compelling reason to depart. Instead, it must rely on the reasons stated by the trial court. If they are insufficient, the review must end there, and the case must be remanded for resentencing. Babcock, 469 Mich at 273 (appendix to majority opinion).
But even if we were to refer to the sentencing transcript, a substantial and compelling reason justifying the departure cannot be found. The only statement in the record that might constitute a reason for departure is the following statement by the court:
I seldom ever exceed guidelines, in fact I can’t recall a time that I have, but I’m going to in your case. The behavior that you exhibited here certainly is not or was not contemplated in arriving at your original guidelines. It was gross, it was abusive, and I believe there’s a compelling reason to exceed guidelines.
One could infer from this that the court intended to depart because Burns’s behavior was “gross” and “abusive.”
These are subjective words. Whether conduct is “gross” and “abusive” is a determination that changes depending on who is reviewing it. It could vary drastically according to a person’s culture, upbringing, religion, and education. Because of its subjective nature, a finding that actions were “gross” and “abusive” cannot be a substantial and compelling reason to depart from the sentencing guidelines. Babcock, 469 Mich at 257-258. Burns must be resentenced. MCL 769.34(H).[5]
*651 Therefore, no need exists to reach the Sixth Amendment question in this case. It is a well-accepted rule that an appellate court will not grapple with a constitutional issue if a case can be decided on other grounds. J & J Constr Co v Bricklayers & Allied Craftsmen, Local 1, 468 Mich 722, 734; 664 NW2d 728 (2003); Booth Newspapers, Inc v Univ of Michigan Bd of Regents, 444 Mich 211, 234; 507 NW2d 422 (1993). The majority disregards this rule without providing its reason. At the very least, the majority should have addressed the Babcock issue before undertaking the application oí Blakely v Washington[6] here. If it had done so, the constitutional issue could have been avoided entirely.[7]
II. PEOPLE v HARPER
A. PROCEDURAL FACTS
Harper pleaded guilty of larceny in a building under MCL 750.360, which provides:
Any person who shall commit the crime of larceny by stealing in any dwelling house, house trailer, office, store, *652 gasoline service station, shop, warehouse, mill, factory, hotel, school, barn, granary, ship, boat, vessel, church, house of worship, locker room or any building used by the public shall be guilty of a felony.
This is a class G offense with an absolute maximum sentence of four years in prison. MCL 750.503; MCL 777.16r.
Before imposing sentence, the trial court calculated a score for both the prior record variables (PRVs) and the offense variables (OVs). It scored 50 points for PRV 1 because of defendant’s two prior high-severity felony convictions. MCL 777.51(l)(b). It scored 20 points for PRV 2 because of defendant’s three prior low-severity felony convictions. MCL 777.52(l)(b). And it scored 2 points for PRV 5 because of defendant’s prior misdemeanor conviction. MCL 777.55(l)(e). The court also scored 5 points for OV 16. To do so, it made a finding of fact using a preponderance of the evidence standard. It found that the stolen property in question “had a value of $1,000.00 or more but not more than $20,000.00.” MCL 777.46(l)(c). Harper did not admit the value of the stolen property.
MCL 777.68 sets forth the class G sentencing grid. On this grid, a PRV level of 72 points and an OV level of 5 points converge in cell E-I. This cell provides a minimum sentence range of zero to 17 months. MCL 777.68. Had the trial court not scored 5 points for OV 16, Harper’s OV level would have been zero points. This would not have changed his minimum sentence range under the guidelines. A PRV level of 72 points and an OV level of zero points still converge in cell E-I. MCL 777.68. Because the judicial findings necessary to score OV 16 did not change the range, they are immaterial to this case.
*653 In light of the fact that the top end of the guidelines range is less than 18 months, Harper’s minimum sentence range is in an intermediate sanction cell. This means that his sentence must not exceed 12 months in jail, absent substantial and compelling reasons to depart. MCL 769.34(4)(a). The trial court imposed a sentence of 24 to 48 months in prison.[8] It prepared a sentencing information report departure evaluation form stating its reasons for the upward departure:
Guidelines do not include at least 3 parole revocations, abscondings from probation, Bench warrants from various courts and stealing from a charity that serves freezing children[.]
B. SUBSTANTIAL AND COMPELLING REASONS FOR THE UPWARD DEPARTURE
In this case, the reasons stated for departure survive review under Babcock. The parole revocations, the abscondings from probation, and the bench warrants could be objectively verified using court files and the records of the Department of Corrections. These facts were of “considerable worth” in determining Harper’s sentence because they demonstrated a pattern of failing to meet legally imposed expectations and minimum societal behavioral requirements. Therefore, they provided substantial and compelling reasons to exceed an intermediate sanction at sentencing. Babcock, 469 Mich at 257-258.
*654 The final stated reason, “stealing from a charity that serves freezing children,” was also substantial and compelling. It is undisputed that Harper stole from the Old Newsboys, a charity associated with Goodfellows. While the “freezing children” comment could be viewed as hyperbole, it is undisputed that the charity is dedicated to helping needy families and children. One of its missions is to provide winter coats. Because of this, I would find that the final reason for departure was objective and verifiable. The fact that Harper stole from a charity was of considerable importance at sentencing, given that it distinguished him from the typical defendant. Because of this, it also satisfied the requirements of Babcock. Id.
The trial court complied with the sentencing guidelines requirements and stated substantial and compelling reasons to depart from an intermediate sanction. The discussion now must turn to the constitutionality of doing so.
C. BLAKELY S BRIGHT-LINE RULE
As I explain in McCuller,[9] the United States Supreme Court has articulated a bright-line rule for Sixth Amendment analysis:
Except for a prior conviction, “any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” [Cunningham v California, 549 US 127 S Ct 856, 868; 166 L Ed 2d 856 (2007), quoting Apprendi v New Jersey, 530 US 466, 490; 120 S Ct 2348; 147 L Ed 2d 435 (2000).]
The “statutory maximum” sentence is not always the absolute maximum sentence set by statute.
*655 The dispositive question, we said, “is one not of form, but of effect.” If a State makes an increase in a defendant’s authorized punishment contingent on the finding of a fact, that fact — no matter how the State labels it — must be found by a jury beyond a reasonable doubt. A defendant may not be “expose[d] ... to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone.” [Ring v Arizona, 536 US 584, 602; 122 S Ct 2428; 153 L Ed 2d 556 (2002), quoting Apprendi, 530 US at 483, 494 (citations omitted; emphasis in Apprendi) i\
Therefore, the statutory maximum sentence for Sixth Amendment purposes is the maximum sentence permissible based on the jury’s verdict, the defendant’s prior criminal record, and any admissions that the defendant made. It is irrelevant that the trial court could have found additional facts that could have increased the sentence. Blakely v Washington, 542 US 296, 303-304; 124 S Ct 2531; 159 L Ed 2d 403 (2004). This rule is necessary to properly protect the people’s control of the judiciary, as intended by the Framers of the United States Constitution. Id. at 313.
When a defendant is entitled to a sentence that is within the range specified in an intermediate sanction cell, MCL 769.34(4)(a) sets his or her maximum sentence. That maximum sentence is a jail term of either the upper limit of the recommended minimum sentence range or 12 months, whichever is shorter. Under the guidelines statutes, the court may not exceed this maximum sentence, unless it can state substantial and compelling reasons to do so. MCL 769.34(4)(a). Therefore, unlike a typical sentencing in Michigan, the process no longer is concerned with the defendant’s minimum sentence. Under the Supreme Court’s bright-line rule, this alteration in focus changes what has become known as the defendant’s “statutory maximum.”
*656 The new maximum sentence established under MCL 769.34(4)(a) is the defendant’s “statutory maximum.” This is true because it is the longest sentence that the court can give a defendant solely on the basis of the defendant’s criminal record and admissions and the jury’s verdict. Cunningham, 127 S Ct at 868; United States v Booker, 543 US 220, 244; 125 S Ct 738; 160 L Ed 2d 621 (2005); Blakely, 542 US at 301; Apprendi, 530 US at 490; Jones, 526 US at 251-252. The effect of making findings of fact that move the sentence to a higher statutory maximum is that the defendant faces either (1) a different criminal charge or (2) the increased stigma of an extended sentence. This is specifically what the Supreme Court sought to avoid. Apprendi, 530 US at 484. Any judicial fact-finding that lifts the defendant’s sentence above the statutory maximum is unconstitutional and violates Jones and its progeny.
D. WHY HARPER’S SENTENCE VIOLATES THE SIXTH AMENDMENT
As I explain in McCuller,[10] scoring the OVs can violate Blakely’s bright-line rule. The violation in Harper is particularly clear. Harper’s case closely mirrors the situation in Cunningham. California’s determinate sentencing law (DSL) created a three-tiered sentencing system for most crimes. The statute defining Cunningham’s offense provided a lower, a middle, and an upper sentence. The California Penal Code mandated that the trial court impose the middle term, unless circumstances existed that mitigated or aggravated the offense. Cunningham, 127 S Ct at 861-863. The Supreme Court paid special attention to the fact that a defendant in California was entitled to the middle sentence unless the sentencing court made additional findings of fact:
*657 California’s DSL, we note in this context, resembles pre-Booker federal sentencing in the same ways Washington’s sentencing system did: The key California Penal Code provision states that the sentencing court “shall order imposition of the middle term” absent “circumstances in aggravation or mitigation of the crime,” [Cal Penal Code] 1170(b) (emphasis added), and any move to the upper or lower term must be justified by “a concise statement of the ultimate facts” on which the departure rests, [Cal Ct R] 4.420(e) (emphasis added). [Cunningham, 127 S Ct at 866 n 10 (emphasis in original).]
MCL 769.34(4)(a) contains similar mandatory language: “[T]he court shall impose an intermediate sanction unless the court states on the record a substantial and compelling reason to sentence the individual to the jurisdiction of the department of corrections.” (Emphasis added.) Therefore, just like a defendant in California, a defendant in Michigan is entitled to an intermediate sanction cell sentence. And the court is authorized to depart from the sentence only through judicial fact-finding after the jury verdict. As in California, these findings of fact need be based only on a preponderance of the evidence.
Hence, as in the California scheme, a sentence resulting from an intermediate sanction cell in Michigan constitutes a “statutory maximum” for purposes of Apprendi. Cunningham, 127 S Ct at 868. There is no meaningful difference between a Michigan court departing from an intermediate sanction cell and a California court imposing the upper term available under that state’s penal code. It follows that reversal is mandated in this case.
The majority effectively attempts to rewrite MCL 769.34(4) (a) to make it provide for no more than a minimum sentence. As I explain in McCuller, the attempt falls short of its goal. The language of the statute *658 is not ambiguous. “An intermediate sanction may include a jail term that does not exceed the upper limit of the recommended minimum sentence range or 12 months, whichever is less.” MCL 769.34(4)(a) (emphasis added). The statute mandates that the sentencing court impose an intermediate sanction when a defendant falls into an appropriate cell, unless the court makes judicial findings of fact to support a departure. MCL 769.34(4)(a). It also defines the upper limit of an intermediate sanction cell sentence: 12 months in jail. Because this is the highest sentence a defendant may face, it is, in every sense, a maximum sentence. Absent judicial fact-finding, the trial court has no power to impose even a 13-month sentence. At most, Harper should have faced 12 months in jail. MCL 769.34(4)(a).[11]
The majority tries to change this fact by turning to MCL 769.8(1). MCL 769.8(1) states that there are cases in which the sentencing court will not fix the minimum sentence and in which the absolute maximum sentence will not apply. It notes that other provisions in that chapter of the Code of Criminal Procedure state the exceptions to the general rule. MCL 769.34 is in the same chapter. And MCL 769.34(4)(a) provides that the sentencing court sets the maximum sentence. Therefore, these statutes, read together, show that intermediate sanction cells do not merely set minimum sentences. The Legislature intended that intermediate sanction cells set maximum sentences. MCL 769.34(4)(a); MCL 769.8(1). This Court has no right to change this fact.
*659 Hence, there are two possible maximum sentences for the offense in question, the absolute statutory maximum and the intermediate sanction cell statutory maximum. A defendant is entitled to whichever one is supported by his or her conviction, admissions, and criminal record. “[A]nd by reason of the Sixth Amendment [any additional] facts bearing upon that entitlement must be found by a jury.” Blakely, 542 US at 309. Therefore, if other facts are used to move the defendant to the higher of the two maximum sentences, they must be proved to the jury beyond a reasonable doubt.
E. MICHIGAN’S MIXED DETERMINATE/INDETERMINATE SENTENCING SCHEME
The majority attempts to justify its conclusion in this case by claiming that Michigan has a traditional indeterminate sentencing scheme. See id. at 308-309. The United States Supreme Court has noted that such schemes do not violate the Sixth Amendment. But because intermediate sanction cells set maximum sentences, Michigan’s sentencing scheme is distinct from the traditional indeterminate scheme. For Sixth Amendment purposes, it is properly viewed as a mixed determinate/indeterminate sentencing scheme. This is because, as discussed in Blakely, a traditional indeterminate scheme can have only one maximum sentence. Id. at 308-309. The fact that Michigan’s scheme is different in this way mandates that it be treated differently. Again, this makes Michigan’s system strikingly similar to California’s system, which the Supreme Court found unconstitutional in Cunningham.
As I discuss in McCuller, the majority also attempts to distinguish the Michigan system from a wholly determinate scheme by noting that one possible intermediate sanction is probation. MCL 769.31(b). To sup *660 port its argument, the majority relies on the federal probation system. But Michigan’s probation system differs greatly from the federal system. Whereas the federal system imposes a new sentence after a probation violation, the Michigan system merely directs re-sentencing using the original sentencing guidelines. See United States v Goffi, 446 F3d 319, 322 (CA 2, 2006), and Hendrick, 472 Mich at 560. Because the same guidelines apply before and after a probation violation in this state, Blakely continues to apply after a probation revocation. This completely undermines the majority’s argument that intermediate sanction cells set only minimum sanctions.[12]
The Court of Appeals for the Second Circuit explained why Blakely does not apply to sentencing after a federal probation violation:
The statutory scheme thus requires a sentencing court to consider a variety of factors, including the non-binding policy statements applicable to probation violations, in determining an appropriate sentence. Nowhere, however, does it require a court to sentence within the Guidelines range for the underlying conviction in determining punishment for separate and distinct malfeasance by the defendant —violation of probation.... United States v. Pena, 125 F.3d 285, 287 (5th Cir.1997). (“Because there are no guidelines for sentencing on revocation of probation, and because the district court was not limited to the sentencing range available at the time of the initial sentence, we find no error in the trial court’s failure to employ the analysis normally required in departure case[s].”).... (Goffi, 446 F3d at 322-323 (emphasis added).]
*661 The exact opposite is true in Michigan. The guidelines continue to apply to a Michigan defendant. Hendrick, 472 Mich at 560. The sentencing court is limited to the sentence range available at the time of the initial sentence. And the probation violation is not treated as a separate malfeasance in Michigan. People v Kaczmarek, 464 Mich 478, 483-484; 628 NW2d 484 (2001).
These fundamental differences between the Michigan system and the federal system mandate different results when Blakely’s bright-line rule is applied. Because none of the factors relied on by the federal courts exists in Michigan, Blakely continues to apply after probation revocation in Michigan. This completely undermines the majority’s argument that, because of the possibility of probation as an intermediate sanction, intermediate sanction cells produce a minimum sentence rather than a maximum sentence.[13]
The majority further argues that intermediate sanctions must be minimum sentences because a defendant subject to them can be given a sentence of probation with jail. It argues that recognizing that intermediate sanction cell sentences are statutory maximum sentences will limit the effectiveness of imposing such sentences. Although it is true that MCL 769.31(b)(iu) allows *662 for intermediate sanction cell sentences that include both probation and jail, the majority’s reliance on this point is irrelevant.
The Legislature has determined that a sentence of 12 months in jail is an appropriate statutoiy maximum sentence for defendants who merit an intermediate sanction.[14] Our constitution vests the Legislature with the ultimate authority to set criminal penalties. Const 1963, art 4, § 45; People v Hegwood, 465 Mich 432, 436; 636 NW2d 127 (2001). The Legislature inserted the 12-month limit on jail sentences in MCL 769.34(4)(a). Only the Legislature, not this Court, may increase this limit. Someone who believes that the 12-month cap is insufficient can petition the Legislature to amend the statute. But the Court cannot ignore the statutory maximum sentence and a defendant’s Sixth Amendment rights because it finds the statutory penalty insufficient.
For example, those who believe that 12 months is insufficient incarceration to punish probation violators could petition the Legislature to change Michigan’s probation system to mimic the federal system. The Legislature could follow the lead of Goffi and treat a probation violation as a separate malfeasance. It could make probation violation subject, not to the guidelines for the underlying offense, but to independent punishment. See Goffi, 446 F3d at 322-323; Pena, 125 F3d at 287. If the Legislature effected such a change, it could eliminate the Sixth Amendment violation now lurking in the Michigan system. But, again, this decision must be left to the Legislature.
*663 Ultimately, and most importantly, the majority cannot disregard the Sixth Amendment simply because it is convenient for purposes of the status quo or because it comports with legislative intent. Blakely specifically rejected any such approach:
Ultimately, our decision cannot turn on whether or to what degree trial by jury impairs the efficiency or fairness of criminal justice. One can certainly argue that both these values would be better served by leaving justice entirely in the hands of professionals; many nations of the world, particularly those following civil-law traditions, take just that course. There is not one shred of doubt, however, about the Framers’ paradigm for criminal justice: not the civil-law ideal of administrative perfection, but the common-law ideal of limited state power accomplished by strict division of authority between judge and jury. As Apprendi held, every defendant has the right to insist that the prosecutor prove to a jury all facts legally essential to the punishment. [Blakely, 542 US at 313 (emphasis in original).]
It might be easier to continue the current modus operandi: to punish probation violators by allowing judges to increase their statutory maximum sentence by using findings of fact not supported by the violators’ prior record or admissions or the jury’s verdict. But the Sixth Amendment does not allow courts to disregard defendants’ rights just because to make a correction would require the judicial system to undergo change. Id.
The majority is also incorrect in relying on its belief that the Legislature intended that probation violators be punished with more than 12 months in jail. Even if the Legislature intended that punishment, it is irrelevant. This fact is made obvious by the decision in Ring. The Arizona legislature intended that a sentence of death should be imposed in first-degree murder cases in *664 which aggravating factors existed. Ring, 536 US at 592-593. But the Supreme Court found that this intent could not be effectuated in light of the Sixth Amendment. Notwithstanding the Arizona legislature’s intent, the judicial fact-finding that increased Ring’s maximum sentence to the death penalty violated Blakely’s bright-line rule: “If a State makes an increase in a defendant’s authorized punishment contingent on the finding of a fact, that fact — no matter how the State labels it — must be found by a jury beyond a reasonable doubt.” Id. at 602.
Moreover, the proper application of the Sixth Amendment to Michigan’s intermediate sanction cells need not weaken an intermediate sanction cell sentence of probation with jail. The system easily could be made to comply with Blakely. For example, this Court could amend our court rules to provide for a jury to be impaneled after a court found a probation violation. If the jury then found beyond a reasonable doubt the facts necessary to move the defendant from an intermediate sanction cell, there would be no Sixth Amendment violation. Therefore, Michigan could both retain its current probation system and protect a defendant’s constitutional rights.[15]
The majority contends that the imposition of an intermediate sanction cell sentence does not affect the absolute maximum statutory sentence. It reasons that a defendant is not entitled to an intermediate sanction cell sentence until after the court decides that substantial and compelling reasons to depart from it do not exist. Therefore, it reasons, there is only one statutory *665 maximum sentence. But the Supreme Court heard and rejected a similar argument in Ring. There the pertinent statute directed the judge to conduct a separate sentencing hearing. The purpose of the hearing was to enable the judge to determine the existence of specified circumstances in order to decide which to impose, the death penalty or life imprisonment. Ring, 536 US at 592-593. But the Supreme Court concluded that the fact that the judge could impose a higher sentence under the sentencing scheme is not relevant. A defendant is entitled to a sentence based solely on the jury’s verdict and the defendant’s admissions and criminal history. The Supreme Court explained:
In an effort to reconcile its capital sentencing system with the Sixth Amendment as interpreted by Apprendi, Arizona first restates the Apprendi majority’s portrayal of Arizona’s system: Ring was convicted of first-degree murder, for which Arizona law specifies “death or life imprisonment” as the only sentencing options, see Ariz. Rev. Stat. Ann. § 13-1105(0) (West 2001); Ring was therefore sentenced within the range of punishment authorized by the jury verdict. See Brief for Respondent 9-19. This argument overlooks Apprendi’s instruction that “the relevant inquiry is one not of form, but of effect.” 530 U.S., at 494. In effect, “the required finding [of an aggravated circumstance] expose[d] [Ring] to a greater punishment than that authorized by the jury’s guilty verdict.” Ibid.; see 200 Ariz., at 279, 25 E 3d, at 1151. The Arizona first-degree murder statute “authorizes a maximum penalty of death only in a formal sense,” Apprendi, 530 U.S., at 541 (O’Connor, J., dissenting), for it explicitly cross-references the statutory provision requiring the finding of an aggravating circumstance before imposition of the death penalty. See [Ariz Rev Stat Ann] 13-1105(0 (“First degree murder is a class 1 felony and is punishable by death or life imprisonment as provided by [Ariz Rev Stat Ann] 13-703.” (emphasis added)). If Arizona prevailed on its opening argument, *666 Apprendi would be reduced to a “meaningless and formalistic” rule of statutory drafting. [Id. at 603-604.]
The Supreme Court made clear that the majority’s argument in this case must fail. The Arizona court in Ring was imposing a statutory maximum sentence by sentencing the defendant to a life sentence rather than the death penalty. Similarly, a Michigan court imposes a statutory maximum sentence when sentencing a defendant to an intermediate sanction cell sentence rather than to the absolute maximum sentence. Both systems set statutory maximum sentences. And, in both situations, judicial fact-finding by the sentencing court increasing this sentence violates the Sixth Amendment, no matter what formalistic gloss is placed on the fact-finding.[16]
In summary, Michigan’s intermediate sanction cells set maximum sentences. They can be increased only through judicial fact-finding after the jury’s verdict. Because of this fact, intermediate sanction cell sentences equate to the middle term of California’s DSL system. Cunningham, 127 S Ct at 868. Both constitute a statutory maximum sentence for Apprendi purposes.
*667 In this case, but for the trial court’s findings of fact made using a preponderance of the evidence standard, Harper would have received an intermediate sanction. The highest valid sentence he would have faced was 12 months in jail. MCL 769.34(4)(a). The sentence he received was four years in prison. This violated the Sixth Amendment, and the violation requires resentencing.
P. HARMLESS ERROR
The Supreme Court concluded that Blakely errors are not structural errors requiring automatic reversal. Washington v Recuenco,_US_; 126 S Ct 2546, 2553; 165 L Ed 2d 466 (2006). The Court reasoned that sentencing factors were equivalent to the elements of the crime. Both must be proved to a jury beyond a reasonable doubt. Id. at 2552. The appropriate standard of review for this constitutional issue is whether the omission of an element of the offense was harmless beyond a reasonable doubt. Neder v United States, 527 US 1, 18-19; 119 S Ct 1827; 144 L Ed 2d 35 (1999).
Michigan has no process for criminal juries to make special findings of fact. See MCR 6.420. This procedural problem is no small issue. In Recuenco, the United States Supreme Court considered the consequences of there being no procedure by which a jury could have made a finding. It suggested that a defendant would be more likely to demonstrate successfully that the Blakely violation was not harmless in such a situation. Recuenco, 126 S Ct at 2550. This case evidences the procedural problem noted in Recuenco.
The jury convicted Recuenco of second-degree assault on the basis of its finding that he had assaulted his wife with a deadly weapon. Id. at 2549. He objected to the judicial finding that was made after the verdict that the deadly weapon was a firearm. Id. Thus, in Recuenco, *668 state law specifically allowed juries to make findings of fact. And the fact used by the judge in sentencing closely related to the fact found by the jury.
In this case, no procedure was available for the jury to make special findings. The United States Supreme Court has not addressed the application of a harmless error analysis to Blakely questions in such situations. But the procedural discussion in Recuenco suggests that the prosecution could not carry its burden in this case to prove the Blakely error harmless beyond a reasonable doubt. See id. at 2550.[17] At the very least, it is not clear that the jury’s verdict would have been the same as the trial court’s findings. Therefore, the error was not harmless. Neder, 527 US at 18-19.[18]
Even if procedures for special jury findings existed here, the prosecution could not prove that the failure to submit these issues to the jury was harmless beyond a reasonable doubt.
*669 Of course, safeguarding the jury guarantee will often require that a reviewing court conduct a thorough examination of the record. If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error— for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding — it should not find the error harmless. [Id. at 19.]
In this case, Harper had no opportunity to present contrary evidence. The majority relies on the fact that he did not object to the presentence investigation report (PSIR). But this reliance is misplaced.
“[T]he prosecution’s burden to prove every element of the crime is not relieved by a defendant’s tactical decision not to contest an essential element of the offense.” Estelle v McGuire, 502 US 62, 69; 112 S Ct 475; 116 L Ed 2d 385 (1991). The right to trial by jury is a basic right that cannot be waived, unless the waiver is fully informed and publicly acknowledged. Taylor v Illinois, 484 US 400, 418 n 24; 108 S Ct 646; 98 L Ed 2d 798 (1988). Harper decided not to object at sentencing to the information in his PSIR. When he did that, he could not have known that he was entitled to have the prosecution prove the statements contained in the PSIR beyond a reasonable doubt. Had he known that, and had he known that this Court would treat his failure to object as a waiver, he likely would have put the prosecution to its proofs. And it is not certain that the prosecution could have proved the information in the PSIR beyond a reasonable doubt.
In any event, the information in the PSIR does not support the judicial findings in this case beyond a reasonable doubt. The trial court’s reasons for departure were:
*670 Guidelines do not include at least 3 parole revocations, abscondings from probation, Bench warrants from various courts and stealing from a charity that serves freezing children[.]
The PSIR only briefly mentions a bench warrant in the investigating agent’s evaluation. Nothing in the PSIR talks of freezing children. In fact, the prosecution has presented no evidence to this Court to support either finding on these matters beyond a reasonable doubt. It is unknown if children were harmed by Harper’s actions. And it is unclear what defenses Harper may have had against the unknown bench warrants. Therefore, the prosecution has not proved beyond a reasonable doubt that the error in this case was harmless. Neder, 527 US at 19. Resentencing is mandated.[19]
III. CONCLUSION
There was no need for the majority to reach the Sixth Amendment issue in Burns. The trial court failed to *671 articulate substantial and compelling reasons to depart upward from the sentencing guidelines range. Burns must be resentenced without regard to the Blakely issue. Because he was not properly sentenced under existing law, the Sixth Amendment issue is not ripe for review.
Harper’s sentence does viólate the Sixth Amendment. The trial court based its departure sentence on facts that a jury never decided were true and that Harper never admitted. But for those findings, Harper would have received an intermediate sanction cell sentence, which could not have exceeded 12 months in jail. MCL 769.34(4)(a). But his sentence was four years in prison. This violated the Sixth Amendment, and it requires resentencing.
The Harper case illustrates that a grave constitutional problem arises in this state when Blakely is correctly applied. In its effort to save the Michigan sentencing guidelines, the majority fails to pay respect to the United States Supreme Court’s Sixth Amendment precedent. When this precedent is properly applied, it becomes apparent that a major restructuring of Michigan’s sentencing guidelines is in order.

 The Sixth Amendment of the United States Constitution provides:
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence. [US Const, Am VI.]

 MCL 777.1 et seq.

 526 US 227; 119 S Ct 1215; 143 L Ed 2d 311 (1999).

 The sentencing court is required to apply the sentencing guidelines when sentencing after a probation violation. People v Hendrick, 472 Mich 555, 560; 697 NW2d 511 (2005).

 The Michigan Department of Corrections paroled Burns on November 14, 2006. But the parole does not render moot the discussion of his sentence. Burns remains under supervision until November 14,2007. See Offender Tracking Information System, available at <http://www. state.mi.us/mdoc/asp/otis2profile.asp?mdocNumber=414793> (accessed *651 June 28,2007). Until that date, he faces the potential of parole revocation and could be returned to prison for the remainder of his five-year maximum sentence. Were the Court to order him resentenced, however, and were the trial court to impose the intermediate sanction cell maximum sentence of 11 months in jail, Burns would be released from supervision. And he would not face the potential of returning to prison.

 542 US 296; 124 S Ct 2531; 159 L Ed 2d 403 (2004).

 Because I find that no substantial and compelling reason to depart was articulated in this case, I need not address whether the court’s departure violated the Sixth Amendment. But I note that my analysis from McCuller, 479 Mich at 702-751, and my discussion of Harper here would apply equally to Bums had the trial court found appropriate reasons to depart. Therefore, if the reasons stated to depart had been objective and verifiable, I would have remanded the case for resentencing because of the Blakely violation.

 The Michigan Department of Corrections paroled Harper on February 14, 2007. The parole does not make discussion of his sentence moot. He remains under supervision until August 14, 2008. See Offender Tracking Information System, available at <http://www.state.mi.us/ mdocv'asp/otis2proffle.asp?mdocNumber=358848> (accessed June 28, 2007). On resentencing, were the trial court to impose the intermediate sanction cell maximum sentence of 12 months in jail, Harper would be released from supervision immediately, with no potential of returning to prison.

 479 Mich at 715-718 (Kelly, J., dissenting).

 479 Mich at 719-726 (Kelly, J., dissenting).

 The majority claims that a Michigan defendant is hable to serve the absolute maximum sentence in every case. See ante at 614 n 25. MCL 769.34(4)(a) shows the fallacy of this point. Some Michigan defendants face no higher maximum than 12 months in jail, even though a second, higher statutory maximum sentence exists for their crime. This undeniable fact destroys the majority’s premise that Michigan has only one maximum sentence for each crime.

 Further undermining the majority’s theory is the fact that intermediate sanction cell sentences are treated as maximum sentences in Michigan. When a defendant receives only an intermediate sanction jail sentence, he or she faces that sentence and nothing more. The defendant is not reevaluated after completing the sentence to see if prison time is required. Rather, the defendant is set free.

 The majority simply disregards the reasoning of Goffi and Pena. And in doing so, it disregards the distinctions between the two systems. In fact, the two systems differ greatly. In the federal system, a court no longer sentences under the guidelines, probation is viewed as a distinct malfeasance, and the former statutory maximum no longer applies. Goffi, 446 F3d at 322-323; Pena, 125 F3d at 287. In Michigan, probation is not a separate offense, the guidelines still apply, and the defendant remains subject to the statutory maximum sentence created by MCL 769.34(4)(a). Therefore, unlike the federal system, the Michigan system is still subject to the Blakely bright-line rule after a defendant violates probation.

 “An intermediate sanction may include a jail term that does not exceed the upper limit of the recommended minimum sentence range or 12 months, whichever is less.” MCL 769.34(4)(a).

 For a complete discussion of the appropriate remedy for the constitutional violation occurring in these cases, please see my dissenting opinion in People v McCuller, 475 Mich 176, 208-213; 715 NW2d 798 (2006).

 The majority attempts to distinguish Ring by focusing on the fact that the sentence of death in that case could be imposed only if the judge found aggravating circumstances. Ante at 614 n 25. It concludes that this distinguishes Arizona’s sentencing scheme from Michigan’s sentencing guidelines because, it postulates, only one maximum sentence exists in Michigan. As I explain both here and in McCuller, this is simply inaccurate. Just as in Ring, a defendant in Michigan who falls in an intermediate sanction cell faces one maximum sentence (12 months in jail) unless the court makes findings of fact that move him or her out of that cell. Whether these findings are called an identification of aggravating circumstances, a scoring of OVs, or a departure from the guidelines, one fact remains the same: the trial court is engaging in activity that increases the defendant’s sentence by making findings not supported by the jury’s verdict, the defendant’s admissions, or the defendant’s past convictions. This violates Blakely’s bright-line rule.

 The majority apparently misses the point of why the Supreme Court indicated that the lack of procedure would increase the difficulty in proving the error harmless. Simply, if the jury has no means of making the finding, how can a reviewing court presume that the jury would have made that finding regardless of the prohibition against it?

 The majority accuses me of effectively concluding that all Blakely errors are “harmful per se.” Ante at 640 n 70. This is inaccurate. I acknowledge that the Blakely error in Recuenco was not harmful per se. But when I apply the words of the United States Supreme Court, it is not clear to me that Blakely errors in Michigan may be harmless beyond a reasonable doubt. This is because, as the Supreme Court advises, the lack of a procedure for special findings will increase the difficulty of the prosecution’s burden to prove any error harmless beyond a reasonable doubt. And Michigan lacks a procedure.
As I discuss at length in McCuller, 479 Mich at 746-748 (Kelly, J., dissenting), the majority also misstates the law regarding the ability of a jury to make special findings in a criminal proceeding. This Court specifically rejected such procedures long ago in People v Marion, 29 Mich 31, 40-41 (1874). And the court rules do not permit our breaking with this longstanding precedent in this case.

 I disagree with Justice CAVANAGH’s assessment that Harper’s guilty plea and his statement that he did not contest the PSIR constituted an admission for Sixth Amendment analysis purposes. A waiver “consists of (1) specific knowledge of the constitutional right and (2) an intentional decision to abandon the protection of the constitutional right.” People v Williams, 475 Mich 245, 261; 716 NW2d 208 (2006). Courts should indulge every reasonable presumption against waiver of a fundamental right. Id. at 260. This Court has set an even higher standard for an admission:
[A] statement made by a party or his counsel, in the course of trial, is considered a binding judicial admission if it is a distinct, formal, solemn admission made for the express purpose of, inter alia, dispensing with the formal proof of some fact at trial. [Ortega v Lenderink, 382 Mich 218, 222-223; 169 NW2d 470 (1969).]
This case meets neither standard. Harper did not know that he was addressing his Sixth Amendment rights when he reviewed the PSIR at sentencing. And his plea did not address the facts used to depart from the sentence required by the intermediate sanction cell. Thus, his statements could not constitute a waiver, let alone an admission.