CORRIGAN, J.
This is one of three companion cases involving the application of Blakely v Washington, 542 US 296; 124 S Ct 2531; 159 L Ed 2d 403 (2004), to Michigan’s sentencing scheme. See also People v Harper, 479 Mich 599; 739 NW2d 523 (2007). This case returns to us following a remand from the United States Supreme Court. In our previous opinion, we held that a sentencing court must score both the offense variables (OVs) and the prior record variables (PRVs) to arrive at a defendant’s minimum sentence range. We reasoned that a sentencing court does not violate Blakely principles when it engages in judicial fact-finding to score the OVs in order to calculate a defendant’s recommended minimum sentence range under the sentencing guidelines, even if the defendant’s PRV score alone would place him in an “intermediate sanction cell.”[1] People v McCuller, 475 Mich 176; 715 NW2d 798 (2006) (McCuller I). The Supreme Court subsequently vacated our judgment and remanded the case to us for further consideration in light of Cunningham v California, 549 US_; 127 S Ct 856; 166 L Ed 2d 856 (2007). McCuller v Michigan,_US_; 127 S Ct 1247 (2007) (McCuller II). Having now considered Cunningham, we reaffirm our original decision for three reasons.[2]
*677 First, Cunningham does not alter our view that Michigan’s statutory scheme requires the sentencing court to score both the OVs and the PRVs before determining the defendant’s minimum sentence. A defendant’s qualification for an intermediate sanction is contingent on the sentencing court’s calculation and application of these sentencing variables. A sentencing court’s fact-finding in scoring the OVs does not increase the defendant’s statutory maximum under Blakely.[3] Here, the proper scoring of both the OVs and the PRVs did not place defendant in an intermediate sanction cell. Instead, defendant’s scores placed him in a “straddle cell” with a maximum sentence of 15 years in prison. Defendant was sentenced within this statutory maximum.
Second, as we explained in Harper, supra at 621-638, Michigan, unlike California, has a true indeterminate sentencing scheme. A sentencing court scores the OVs only to calculate the recommended range for the minimum portion of the defendant’s sentence, not to arrive at the defendant’s maximum sentence, which is set by statute. The conditional limit on incarceration contained in MCL 769.34(4)(a) — an intermediate sanction —does not establish the defendant’s statutorily required maximum sentence authorized by the jury’s verdict or the guilty plea, but is instead a matter of legislative leniency, giving a defendant the opportunity *678 to be incarcerated for a period that is less than that authorized by the jury’s verdict or the guilty plea. Harper, supra at 603-604. Therefore, even if defendant were to be sentenced on the basis of his PRV score alone, the sentencing court would not violate Blakely by sentencing him to the statutory maximum of 15 years in prison.
Third, even if the sentencing court violated Blakely by sentencing defendant to a term of imprisonment based on its scoring of the OVs, the error was harmless under the plain error standard of People v Carines, 460 Mich 750, 763-764; 597 NW2d 130 (1999). The factors underlying the scoring of the OVs were uncontested and supported by overwhelming evidence. We are firmly convinced that a jury would have reached precisely the same result.
I. FACTS AND PROCEDURAL HISTORY
Defendant apparently harbored some resentment toward the victim, Larry Smith, because a woman who once lived with defendant had left him for Smith. Smith and the woman were imbibing at a local bar when Smith was told that a man outside in the parking lot was harassing Smith’s dog. When Smith went outside, he heard someone behind him. He turned and saw defendant swinging a blunt object that looked like a bat, a pipe, or a club at his head. The next thing Smith remembered was regaining consciousness in the hospital. As a result of defendant’s assault on Smith, he suffered a concussion, broken nose, broken cheek bone, broken eye socket, fractured skull, and collapsed right inner ear wall. He also lost teeth on the right side of his lower jawbone.
A jury convicted defendant of assault with intent to do great bodily harm less than murder, MCL 750.84, which has a maximum penalty of 10 years in prison. Because defendant was a second-offense habitual offender, *679 however, the sentencing court had the discretion to enhance defendant’s statutory maximum sentence to 15 years. MCL 769.10(l)(a).[4] In determining defendant’s minimum sentence range, the sentencing court scored 10 points for OV 1 because the victim had been “touched by any other type of weapon,” MCL 777.31(l)(c) (now MCL 777.31[l][d]); 1 point for OV 2 because defendant “possessed or used any other potentially lethal weapon,” MCL 777.32(l)(d) (now MCL 777.32[l][e]); and 25 points for OV 3 because a “[l]ife threatening or permanent incapacitating injury occurred to a victim,” MCL 777.33(l)(c). Defendant’s total PRV score was 2 points because he had one prior misdemeanor conviction. These scores placed defendant in the B-IV cell for a class D offense. As a second-offense habitual offender, defendant’s calculated minimum sentence range was 5 to 28 months, which is in a straddle cell.[5] Because the scoring of the OVs and the PRVs *680 placed defendant in a straddle cell, the sentencing court had the option of sentencing defendant to either an intermediate sanction or a prison term with a minimum sentence within the guidelines range. MCL 769.34(4)(c). The court chose to sentence defendant within the guidelines range to a 2- to 15-year term of imprisonment.
On appeal, defendant contended that he was entitled to resentencing under Blakely because the jury had not found beyond a reasonable doubt the facts underlying the sentencing court’s scoring of the OVs. Defendant argued that absent the sentencing court’s scoring of the OVs, his minimum sentence range would have been zero to 11 months, which would have placed him in an intermediate sanction cell, entitling him to an intermediate sanction as a maximum sentence. The Court of Appeals affirmed defendant’s conviction and sentence, rejecting defendant’s argument because Blakely does not apply to Michigan’s indeterminate sentencing system.
This Court also affirmed defendant’s sentence.[6] We held that the sentencing court had not violated Blakely by engaging in judicial fact-finding to score the OVs necessary to calculate the recommended minimum sentence range. We explained that a defendant cannot be sentenced to an intermediate sanction by scoring the PRVs only — the OVs must also be scored. Thus, defendant was not entitled to resentencing, because his maximum sentence was the statutory maximum of 15 years, which the sentencing court had not exceeded. McCuller I, supra at 181-183.
*681 The Supreme Court thereafter vacated our judgment and remanded this case to this Court “for further consideration in light of Cunningham v California, 549 U.S. _; 127 S.Ct. 856; 166 L.Ed.2d 856 (2007).” McCuller II, supra, 127 S Ct at 1247.
II. STANDARD OF REVIEW
This case involves questions of statutory interpretation and constitutional questions, which are both reviewed de novo. People v Stewart, 472 Mich 624, 631; 698 NW2d 340 (2005); People v Drohan, 475 Mich 140, 146; 715 NW2d 778 (2006). An unpreserved claim of constitutional error is reviewed for plain error affecting substantial rights. Carines, supra at 763-764.[7]
III. ANALYSIS
A. BACKGROUND
In Apprendi v New Jersey, 530 US 466, 490; 120 S Ct 2348; 147 L Ed 2d 435 (2000), the Supreme Court held that under the Sixth and Fourteenth Amendments of the United States Constitution, “[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” In Blakely, supra at 303, the Court held that “the ‘statutory maximum’ for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.” (Emphasis deleted.) In regard to indeterminate sentencing schemes, the Blakely Court stated:
*682 Of course indeterminate schemes involve judicial fact-finding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal right to a lesser sentence —and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. [Id. at 309 (emphasis in original).]
Thus, a sentencing court in an indeterminate sentencing scheme does not violate Blakely by engaging in fact-finding to determine the minimum term of a defendant’s indeterminate sentence unless the fact-finding increases the statutory maximum sentence to which the defendant had a legal right.[8]
The constitutional rule of Apprendi, Blakely, and [United States v Booker, 543 US 220; 125 S Ct 738; 160 L Ed 2d 621 (2005)] can be summarized as follows: (1) a trial court may not impose a sentence greater than the statutory maximum unless it does so on the basis of a prior conviction or the fact at issue is “admitted by the defendant or proved to a jury beyond a reasonable doubt”; (2) where a defendant’s maximum sentence is calculated through the use of mandatory sentencing guidelines, the statutory maximum is the maximum sentence that may be imposed *683 under those guidelines, based solely on the defendant’s prior convictions and those facts proven beyond a reasonable doubt; and (3) a trial court may consider facts and circumstances not proven beyond a reasonable doubt in imposing a sentence within the statutory range. [Drohan, supra at 156 (citations omitted).]
In Drohan, supra at 160-161, this Court explained that Michigan has an indeterminate sentencing scheme.[9] “The maximum sentence is not determined by the trial court, but rather is set by law.” Id. at 161. Michigan’s sentencing guidelines create a range within which the sentencing court must set the minimum sentence, but the sentencing court may not impose a sentence greater than the statutory maximum. Id. “Thus, the trial court’s power to impose a sentence is always derived from the jury’s verdict, because the ‘maximum-minimum’ sentence will always fall within the range authorized by the jury’s verdict.” Id. at 162. Therefore, Michigan’s indeterminate sentencing scheme is valid under Blakely. Drohan, supra at 162-164; Harper, supra at 615.
B. SCORING THE OVS TO DETERMINE THE MINIMUM SENTENCE
1. DISCUSSION
Despite our Drohan decision, defendant argues that one aspect of Michigan’s indeterminate sentencing *684 scheme nonetheless violates the Sixth Amendment of the United States Constitution. Defendant claims that because his PRV score alone placed him in an intermediate sanction cell, he was entitled to a maximum sentence that did not include prison time. Defendant contends that the sentencing court violated Blakely by engaging in judicial fact-finding to score the OVs, thereby allegedly increasing his maximum sentence from an intermediate sanction to a term of imprisonment. We again reject defendant’s argument and affirm defendant’s sentence.
Generally, when a defendant is sentenced in Michigan, “[t]he maximum penalty provided by law shall be the maximum sentence . . ..” MCL 769.8(1). Our sentencing guidelines set a range only for a defendant’s minimum sentence. MCL 769.34(2). The sentencing court determines a defendant’s minimum sentence range by considering together the OVs, the PRVs, and the offense class. MCL 777.21(1).[10] Generally, once the *685 sentencing court calculates the defendant’s guidelines range, it must, absent substantial and compelling reasons, impose a minimum sentence within that range. MCL 769.34(2). There are, however, exceptions to this rule. One exception pertains when the upper limit of the recommended minimum sentence range is 18 months or less. In such cases, the court, unless it articulates substantial and compelling reasons, must impose an intermediate sanction:
If the upper limit of the recommended minimum sentence range for a defendant determined under the sentencing guidelines set forth in chapter XVII is 18 months or less, the court shall impose an intermediate sanction unless the court states on the record a substantial and compelling reason to sentence the individual to the jurisdiction of the department of corrections. An intermediate sanction may include a jail term that does not exceed the upper limit of the recommended minimum sentence range or 12 months, whichever is less. [MCL 769.34(4)(a).]
MCL 769.31(b) defines “intermediate sanction” as “probation or any sanction, other than imprisonment in a state prison or state reformatory, that may lawfully be imposed. Intermediate sanction includes, but is not limited to, 1 or more of” several options, including up to one year in jail, probation with any conditions authorized by law, probation with jail, and other options such as house arrest and community service.* [11]
*686 We hold that Cunningham does not require us to modify our previous decision. A sentencing court does not violate Blakely by engaging in judicial fact-finding to score the OVs to calculate a defendant’s recommended minimum sentence range, even when the defendant’s PRV score alone would have placed him in an intermediate sanction cell. Cunningham involved the Supreme Court’s examination of California’s determinate sentencing law (DSL). In Harper, we described the facts and holding in Cunningham:
In Cunningham, the defendant was tried and convicted of continuous sexual abuse of a child under the age of 14. The statute defining the offense prescribed three precise *687 terms of imprisonment — lower, middle, and upper term sentences of 6, 12, and 16 years, respectively. The statute that controlled which term a sentencing judge should impose provided that “ ‘the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime.’ ” Circumstances in aggravation or mitigation were to he determined by the court after considering the trial record, the probation officer’s report, statements submitted by the parties, the victim, or the victim’s family, and “any further evidence introduced at the sentencing hearing.” The judge in Cunningham sentenced the defendant to the 16-year upper term, on the basis of the judge’s findings of aggravating facts including the particular vulnerability of the victim and the defendant’s violent conduct, which indicated a serious danger to the community [Harper, supra, at 619-620.]
The Cunningham Court concluded that the sentence violated the defendant’s rights because
“an upper term sentence may he imposed only when the trial judge finds an aggravating circumstance.... An element of the charged offense, essential to a jury’s determination of guilt, or admitted in a defendant’s guilty plea, does not qualify as such a circumstance.... Instead, aggravating circumstances depend on facts found discretely and solely by the judge. In accord with Blakely, therefore, the middle term prescribed in California’s statutes, not the upper term, is the relevant statutory maximum. 542 U.S., at 303, 124 S.Ct. 2531 (‘[T]he “statutory maximum” for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.’ (emphasis in original)). Because circumstances in aggravation are found by the judge, not the jury, and need only be established by a preponderance of the evidence, not beyond a reasonable doubt,... the DSL violates Apprendi’s bright-line rule: Except for a prior conviction, ‘any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a *688 reasonable doubt.’ 530 U.S., at 490, 120 S.Ct. 2348.” [Harper, supra at 620, quoting Cunningham, supra, 127 S Ct at 868.]
The Supreme Court reiterated its holding from Blakely that “ ‘[t]he relevant “statutory maximum,”’... ‘is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.’ ” Cunningham, supra, 127 S Ct at 860, quoting Blakely, supra at 303-304. After holding that California’s DSL violated Blakely, the Court advised California that “[o]ther states have chosen to permit judges genuinely ‘to exercise broad discretion ... within a statutory range,’ which, ‘everyone agrees,’ encounters no Sixth Amendment shoal.” Cunningham, supra, 127 S Ct at 871, quoting Booker, supra at 233. The Cunningham decision did not modify Blakely.
Although California’s DSL contains some language facially similar to MCL 769.34(4)(a), further examination of the two sentencing schemes reveals clear differences. Under California’s DSL, the defendant was legally entitled to a maximum sentence of 12 years in prison. The DSL did not attach any conditions to the defendant’s entitlement to the 12-year maximum sentence. The DSL violated Blakely by allowing the sentencing court to exceed that 12-year maximum sentence on the basis of facts not submitted to the jury and found beyond a reasonable doubt.
By contrast, Michigan’s sentencing scheme does not entitle defendant to a maximum sentence of an intermediate sanction in the same way that the defendant in Cunningham was entitled to a 12-year maximum sentence. In Michigan, a defendant does not even qualify for an intermediate sanction until after the OVs are scored. MCL 769.34(4) (a) plainly prescribes that a de *689 fendant qualifies for an intermediate sanction only “[i]f the upper limit of the recommended minimum sentence range for a defendant determined under the sentencing guidelines ... is 18 months or less ... .” (Emphasis added.) To determine a defendant’s minimum sentence range under the guidelines, the sentencing court must first score the OVs and the PRVs and consider the offense class. MCL 777.21. Thus, under MCL 769.34(4)(a), a defendant does not even qualify for an intermediate sanction until after the court has scored all the sentencing variables, including the OVs, and those variables indicate that the upper limit of the defendant’s minimum sentence range is 18 months or less. In other words, a defendant’s qualification for an intermediate sanction is contingent on the sentencing court’s calculation of all of the defendant’s sentencing variables. A defendant has no legal right to have his minimum sentence calculated using only a portion of the statutorily enumerated factors.[12]
Upon conviction, a defendant is legally entitled only to the statutory maximum sentence for the crime involved. A defendant has no legal right to expect any lesser maximum sentence. As the Blakely Court stated, whether a defendant has a legal right to a lesser sentence “makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.” Blakely, supra at 309. Thus, a sentencing court does not violate Blakely principles by engaging in *690 judicial fact-finding to score the OVs to calculate the recommended minimum sentence range, even when the scoring of the OVs places the defendant in a straddle cell or a cell requiring a prison term instead of an intermediate sanction cell. The sentencing court’s factual findings do not elevate the defendant’s maximum sentence, but merely determine the defendant’s recommended minimum sentence range, which may consequently qualify the defendant for an intermediate sanction.
In this case, the properly scored guidelines gave defendant a recommended minimum sentence range of 5 to 28 months in prison. This placed defendant in a straddle cell, for which the sentencing court had the discretion to impose a minimum sentence of either a prison term with a minimum term within the guidelines range or an intermediate sanction. MCL 769.34(4)(c).[13] Defendant also faced a statutory maximum sentence of 15 years in prison for his conviction of assault with intent to do great bodily harm less than murder as a second-offense habitual offender, MCL 750.84; see MCL 769.10. Even if Michigan’s intermediate sanction cells are characterized as setting maximum sentences for Blakely purposes, defendant never gained a legal right to an intermediate sanction. Therefore, the sentencing court did not violate Blakely by scoring the OVs and *691 imposing a prison sentence within the guidelines, rather than imposing an intermediate sanction based on defendant’s PRV scores alone. Accordingly, we affirm defendant’s sentence.
2. RESPONSE TO JUSTICE KELLY’S DISSENT[14]
In concluding that the trial court’s scoring of the OVs violated defendant’s Sixth Amendment right to a trial by jury, Justice Kelly’s dissent ignores the statutory language and relies on the faulty premise that defendant’s jury verdict entitled him to an intermediate sanction. Justice KELLY repeatedly recites “Apprendi’s bright-line rule: Except for a prior conviction, ‘any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.’ ” Cunningham, supra, 127 S Ct at 868, quoting Apprendi, supra at 490 (emphasis added). Yet Justice KELLY woefully misapplies this rule by interpreting it as follows:
Hence, a defendant is entitled to a sentence based solely on (1) the defendant’s prior convictions and (2) any facts that he or she admitted and any facts that were specifically found by the jury.
This requires a conclusion that, in order to determine a defendant’s appropriate maximum sentence, a sentencing court should score only the PRVs. [Post at 721.]
This interpretation disregards the integral part of the Apprendi rule that only facts used to increase a sentence beyond the statutory maximum need be proved beyond a reasonable doubt.
*692 Justice Kelly’s position demonstrates a fundamental misunderstanding of the function of the legislative sentencing guidelines and how intermediate sanctions work within the overall sentencing scheme. Once the jury convicted defendant of assault with intent to do great bodily harm less than murder and of being a second-offense habitual offender, the jury’s verdict authorized a maximum prison sentence of 15 years. At that point, the sentencing court, relying on judicially found facts, had to score the various PRVs and OVs to determine the recommended range for the minimum portion of defendant’s sentence. A defendant is only eligible for an intermediate sanction if, on the basis of those additional findings of fact, “the upper limit of the recommended minimum sentence range for a defendant determined under the sentencing guidelines set forth in chapter XVII is 18 months or less . . . .” MCL 769.34(4)(a) (emphasis added). In other words, whether a defendant is eligible for an intermediate sanction is wholly determined by additional findings of fact undertaken by the sentencing court in scoring the guidelines, including the OVs. Moreover, a defendant’s entitlement to an intermediate sanction is itself conditioned on the absence of other judicially found facts, i.e., facts that demonstrate a “substantial and compelling reason to sentence the individual to the jurisdiction of the department of corrections.” MCL 769.34(4)(a); see Harper, supra at 620-638. Therefore, under Cunningham, an intermediate sanction does not constitute the equivalent of the 12-year presumptive maximum sentence set forth in California’s DSL, but operates instead in a manner similar to the 6-year lower term that a California court may impose on the basis of its finding of certain mitigating facts at sentencing. A court’s use of judicially found facts to determine *693 whether to impose a 6-year term or a 12-year term under California’s DSL does not run afoul of Blakely because the court remains limited to imposing the maximum sentence authorized by the jury’s verdict. Likewise, the use of judicially found facts to score the OVs in order to determine whether a defendant is eligible for an intermediate sanction does not run afoul of Blakely because a Michigan trial court may never exceed the maximum sentence authorized by the jury’s verdict, i.e., the statutory maximum. See Harper, supra at 611. Justice KELLY studiously ignores the plain language of MCL 769.34(4) (a) and does not even attempt to explain why the statute entitles a defendant to an intermediate sanction as a maximum sentence before the OVs are scored. Under the plain statutory language, a defendant clearly is not eligible for an intermediate sanction until the recommended minimum sentence range under the sentencing guidelines has been determined by considering all the appropriate factors, including the OVs. Before that, a defendant can only expect the maximum sentence set by statute.[15] Thus, although Justice KELLY correctly asserts that a defendant is entitled to a statutory maximum *694 sentence on the basis of the jury’s verdict, the maximum sentence authorized by the jury’s verdict in this case is 15 years.
C. MICHIGAN’S INTERMEDIATE SANCTION CELLS
Even if defendant may qualify for an intermediate sanction before the OVs are scored, we nonetheless conclude that the sentencing court did not violate Blakely by sentencing him to a term of imprisonment. If the sentencing court had not scored the OVs and defendant had fallen into an intermediate sanction cell, he would still not have been entitled to an intermediate sanction as a statutory maximum sentence. As we held in Harper, supra at 603-604:
Under Michigan law, the maximum portion of a defendant’s indeterminate sentence is prescribed by MCL 769.8, which requires a sentencing judge to impose no less than the prescribed statutory maximum sentence as the maximum sentence for every felony conviction[16] Michigan’s unique law requiring the imposition of an intermediate sanction upon fulfillment of the conditions of MCL 769.34(4)(a) does not alter the maximum sentence that is required upon conviction and authorized by either the jury’s verdict or the guilty plea. Rather, the conditional limit on incarceration contained in MCL 769.34(4)(a) is a matter of legislative leniency, giving a defendant the opportunity to be incarcerated for a period of time that is less than that authorized by the jury’s verdict or guilty plea, a circumstance that does not implicate Blakely. [Emphasis in original.]
Thus, even if defendant fell into an intermediate sanction cell, his statutory maximum sentence would remain 15 years. The sentencing court did not violate *695 Blakely by engaging in judicial fact-finding to score the OVs and impose a sentence within that statutory range.
D. HARMLESS ERROR
Finally, even if the sentencing court violated Blakely by scoring the OVs and sentencing defendant on the basis of those OV scores, the error was harmless. As we explained in Harper, supra at 638-640, Blakely errors are not structural, but are subject to harmless error analysis. See also Washington v Recuenco,_US_; 126 S Ct 2546, 2551; 165 L Ed 2d 466 (2006).[17] Here, defendant did not raise any constitutional challenge during sentencing. Therefore, defendant must show plain error affecting substantial rights. Carines, supra at 763-764; see also United States v Trujillo-Terrazas, 405 F3d 814, 817-818 (CA 10, 2005) (applying the same plain error standard to an unpreserved claim of a Blakely violation). “Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when the error ‘“seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.” ’ ” Carines, supra at 763, quoting United States v Olano, 507 US 725, 736; 113 S Ct 1770; 123 L Ed 2d 508 (1993). The important factor in this Blakely harmless error analysis is whether the facts supporting the sentencing court’s OV scores were “ ‘uncontested and supported by overwhelming evidence.’ ” Harper, supra at 640, quoting Neder v United States, 527 US 1, 17; 119 S Ct 1827; 144 L Ed 2d 35 (1999).
*696 At sentencing, the court scored 10 points for OV 1 because the victim was touched by a weapon other than a firearm or a cutting or stabbing weapon and 1 point for OV 2 because defendant possessed a potentially lethal weapon other than a cutting or stabbing weapon, a firearm, or an incendiary or explosive device. Defendant has not shown that any error in the sentencing court’s scoring of these OVs affected the outcome of the proceedings. Carines, supra at 763. The jury found that defendant assaulted the victim with the intent to do great bodily harm less than murder, and, although the elements of that crime do not include the touching of a victim with a potentially lethal weapon, those facts were uncontested and supported by overwhelming evidence at trial. In regard to OV 1, the uncontroverted evidence showed that the victim was struck in the head with a bat, pipe, or club.[18] The type and severity of the victim’s injuries corroborated the testimony that such a bludgeoning weapon was used. Defendant did not challenge the testimony that he was armed or the evidence regarding the type of weapon used in the assault. Rather, he claimed that he was misidentified as the perpetrator. Thus, the uncontroverted and overwhelming evidence showed beyond a reasonable doubt that the victim was touched by a weapon. In regard to OV 2, the uncontested and overwhelming evidence regarding the magnitude of the victim’s injuries demonstrated that the weapon used to injure him was potentially lethal. The jury rejected defendant’s claim of mistaken identity and *697 convicted defendant as the perpetrator who inflicted the injuries. Therefore, the sentencing court’s decision to score OVs 1 and 2 on the basis of its findings that defendant possessed a potentially lethal weapon and touched the victim with that weapon, if error at all, was harmless.
The sentencing court also scored 25 points for OV 3 because the victim suffered life threatening or permanent incapacitating injury. The uncontroverted evidence at trial showed that the victim was struck so violently that he immediately lost consciousness. He suffered a concussion, broken nose, broken cheek bone, broken eye socket, fractured skull, and collapsed right inner ear wall. He also lost teeth on the right side of his lower jawbone. The severity of these injuries required a ten-day hospital stay. Because the sentencing court’s finding that the victim suffered a life threatening injury was based on uncontested factors and was supported by overwhelming evidence, any error in sentencing based on defendant’s OV 3 score was harmless.[19]
If the jury had been asked to score the OVs, it unquestionably would have reached the same result as the sentencing court. Like the defendants in Harper, supra at 643-644, and Neder, supra at 15, defendant does not suggest that he would offer contrary evidence if given the opportunity to do so. Accordingly, even if the court violated Blakely at sentencing, defendant would not be entitled to resen *698 fencing because he has not shown that that the error “ ‘ “seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.” ’ ” Carines, supra at 763, quoting Olano, supra at 736.
W. CONCLUSION
The sentencing court did not violate Blakely when it engaged in judicial fact-finding to score the OVs and then determined defendant’s minimum sentence on the basis of those scores. Because defendant’s OV score, PRV score, and offense class did not place him in an intermediate sanction cell, he never qualified for an intermediate sanction. Even if defendant were entitled to be sentenced solely on the basis of the PRVs and the offense class, an intermediate sanction does not constitute the statutory maximum sentence authorized by the jury’s verdict or the guilty plea. See Harper, supra at 620-622. Finally, even if the trial court violated Blakely in sentencing defendant to a prison term, any error was harmless because it did not prejudice defendant.
Taylor, C.J., and Weaver, Young, and Markman, JJ., concurred with CORRIGAN, J.

 A defendant falling within an intermediate sanction cell must be sentenced, absent a substantial and compelling reason for departure, to an intermediate sanction that does not include a prison term. MCL 769.34(4)(a).

 In reaffirming our original decision, we do not, as Justice Kelly’s dissent contends, imply that the Supreme Court “simply did not understand Michigan’s sentencing laws.” Post at 699. Justice Kelly seems to *677 read something into the Supreme Court’s order that is simply not there. Justice Kelly is incorrect that the Supreme Court indicated in its order that “there is a Sixth Amendment problem with Michigan’s sentencing guidelines.” Post at 751. We take the Supreme Court’s order for exactly what it is: a remand for us to consider the matter further in light of the Court’s holding in Cunningham. The order does not direct us to decide the case differently from our previous decision.

 The Court of Appeals reached the same conclusion in People v Uphaus, 275 Mich App 158, 168-171; 737 NW2d 519 (2007).

 MCL 769.10(l)(a) provides that a sentencing court may impose a sentence that is IV2 times longer than the maximum sentence on a second-offense habitual offender:
(1) If a person has been convicted of a felony or an attempt to commit a felony, whether the conviction occurred in this state or would have been for a felony or attempt to commit a felony in this state if obtained in this state, and that person commits a subsequent felony within this state, the person shall be punished upon conviction of the subsequent felony and sentencing under section 13 of this chapter as follows:
(a) If the subsequent felony is punishable upon a first conviction by imprisonment for a term less than life, the court, except as otherwise provided in this section or section 1 of chapter XI, may place the person on probation or sentence the person to imprisonment for a maximum term that is not more than IV2 times the longest term prescribed for a first conviction of that offense or for a lesser term.

 A defendant falls within a straddle cell when, after the sentencing variables have been scored, the upper limit of the recommended mini *680 mum sentence exceeds 18 months, but the lower limit of the recommended minimum sentence is 12 months or less. MCL 769.34(4)(c).

 On appeal, defendant raised issues other than the Blakely issue, but this Court denied defendant’s application for leave to appeal with respect to those issues. McCuller I, supra at 183.

 Defendant agrees that his claim of constitutional error should be reviewed under the plain error standard.

 In Harris v United, States, 536 US 545, 566; 122 S Ct 2406; 153 L Ed 2d 524 (2002), Justice Kennedy stated:
The Fifth and Sixth Amendments ensure that the defendant “will never get more punishment than he bargained for when he did the crime,” but they do not promise that he will receive “anything less” than that. Apprendi, supra, 530 US at 498 (Scalia, J., concurring). If the grand jury has alleged, and the trial jury has found, all the facts necessary to impose the maximum, the barriers between government and defendant fall. The judge may select any sentence within the range, based on facts not alleged in the indictment or proved to the jury — even if those facts are specified by the legislature, and even if they persuade the judge to choose a much higher sentence than he or she otherwise would have imposed. That a fact affects the defendant’s sentence, even dramatically so, does not by itself make it an element.

 The very limited number of oflenses that require determinate sentences includes first-degree murder, MCL 750.316 (life in prison without the possibility of parole), and carrying or possessing a firearm when committing or attempting to commit a felony, MCL 750.227b (two years in prison for the first conviction, five years for the second conviction, and ten years for a third or subsequent conviction). Drohan, supra at 161 n 12. When a defendant is sentenced for one of these crimes, the guidelines are not scored to determine the defendant’s minimum sentence. The Legislature has singled out these crimes as rare instances in which the sentencing court retains no discretion in sentencing.

 MCL 777.21(1) provides:
Except as otherwise provided in this section, for an offense enumerated in part 2 of this chapter, determine the recommended minimum sentence range as follows:
(a) Find the offense category for the offense from part 2 of this chapter. From section 22 of this chapter, determine the offense variables to be scored for that offense category and score only those offense variables for the offender as provided in part 4 of this chapter. Total those points to determine the offender’s offense variable level.
(b) Score all prior record variables for the offender as provided in part 5 of this chapter. Total those points to determine the offender’s prior record variable level.
(c) Find the offense class for the offense from part 2 of this chapter. Using the sentencing grid for that offense class in part 6 of this chapter, determine the recommended minimum sentence *685 range from the intersection of the offender’s offense variable level and prior record variable level. The recommended minimum sentence within a sentencing grid is shown as a range of months or life.

 The nonexhaustive list of intermediate sanction options includes:
(¿) Inpatient or outpatient drug treatment or participation in a drug treatment court under chapter 10A of the revised judicature act of 1961, 1961 PA 236, MCL 600.1060 to 600.1082.
*686 Hi) Probation with any probation conditions required or authorized by law.
(iii) Residential probation.
(iv) Probation with jail.
(v) Probation with special alternative incarceration.
(vi) Mental health treatment.
Cvii) Mental health or substance abuse counseling.
{viii) Jail.
(ix) Jail with work or school release.
(x) Jail, with or without authorization for day parole under 1962 PA 60, MCL 801.251 to 801.258.
(xi) Participation in a community corrections program.
(xii) Community service.
(xiii) Payment of a fine.
(xiv) House arrest.
(xv) Electronic monitoring. [MCL 769.31(b).]

 Further, a defendant in Michigan cannot expect to fall into an intermediate sanction cell at the time he commits the offense because the defendant can never be certain how the OVs will be scored. Indeed, an offender may not even be aware of some facts attending the crime until he is brought before a court. To provide just two examples, a defendant may not know the extent of injury he ultimately caused a victim for purposes of OV 3, MCL 777.33, or the full value of property he has stolen for purposes of OV 16, MCL 777.46.

 MCL 769.34(4)(c) provides:
If the upper limit of the recommended minimum sentence exceeds 18 months and the lower limit of the recommended minimum sentence is 12 months or less, the court shall sentence the offender as follows absent a departure:
(i) To imprisonment with a minimum term within that range.
(Ü) To an intermediate sanction that may include a term of imprisonment of not more than 12 months.

 Justice Kelly’s dissent discusses issues we address in detail in Harper. Post at 726-745. Our response to her arguments regarding these issues can be found in the Harper opinion.

 Justice Kelly compares the instant case to Ring v Arizona, 536 US 584; 122 S Ct 2428; 153 L Ed 2d 556 (2002), in which the United States Supreme Court rejected an Arizona sentencing law allowing a sentencing judge to conduct a posttrial hearing to determine whether aggravating circumstances existed to allow imposition of the death penalty, as opposed to life imprisonment. The instant case is distinguishable from Ring, however, for the reasons we have discussed — the juiy’s verdict alone never qualified defendant for an intermediate sanction, because an offender’s qualification for an intermediate sanction is contingent on the scoring of the OVs. In Ring, on the other hand, the maximum sentence allowed by the jury’s verdict — life imprisonment — was not subject to such contingencies. Id. at 597. Further, as we discussed in Harper, supra at 614 n 25, Michigan’s indeterminate sentencing scheme imposes only one maximum sentence — the maximum sentence set forth in the statute applicable to the crime.

 As we explained in Harper, supra at 612 n 21, the habitual-offender statutes are an exception to this rule.

 For the reasons we explained in Harper, supra at 640 n 70, Justice Kelly’s interpretation of Recuenco would improperly render Blakely errors harmful per se. In short, any conclusion that the unavailability of a particular procedure in the trial court renders all errors harmful would run directly counter to the crux of the harmless error analysis that forms the basis of the United States Supreme Court’s holding in Recuenco. See id.

 Justice Kelly’s dissent mischaraeterizes the testimony by arguing that defendant’s use of a weapon was contested by Gregory Thompson, a prosecution witness. First, Thompson did not witness the assault, but was merely told about it by defendant. Second, and more importantly, contrary to Justice Kelly’s representation, Thompson did not testify that defendant did not use a weapon in beating Smith. Rather, Thompson actually testified during cross-examination that he assumed that defendant was armed because of the gestures defendant made while describing the heating.

 Justice Kelly’s dissent incorrectly asserts that medical testimony was necessary to prove that the victim suffered life threatening injuries, especially because defendant did not contest the prosecution’s evidence proving the victim’s serious and extensive injuries. Contrary to Justice Kelly’s assertion, we do not shift the burden of proof to the defendant, but merely note that the statute does not require the prosecution to specifically present medical testimony to prove a “[ljife threatening or permanent incapacitating injury ....” MCL 777.33(l)(c).