# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

ERIK SADOWSKI,

       Defendant-Appellant.

UNPUBLISHED
January 22, 2015

No. 318391
Wayne Circuit Court
LC No. 12-009458-FC

Before: BECKERING, P.J., and JANSEN and BOONSTRA, JJ.

PER CURIAM.

Defendant, Erik Sadowski, appeals as of right his bench trial convictions of assault with intent to commit murder, MCL 750.83, and felonious assault, MCL 750.82. The trial court sentenced defendant to concurrent sentences of 12 to 30 years' imprisonment for the assault with intent to commit murder conviction and one to four years' imprisonment for the felonious assault conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from an altercation in which the victim, Justin Krol, was stabbed multiple times. On September 17, 2012, defendant and Krol, who had been friends for approximately nine years before the stabbing, decided to celebrate defendant's decision to join the United States Army. They began consuming beer at approximately 3:00 p.m. that day, and ended up at the Toy Chest, a strip club, later that evening. While leaving the Toy Chest at approximately 2:00 a.m. the next morning, defendant and Krol confronted Renae Ruelas, Tracy Weiler, Barend Spies, and Carl Lewis, who also attended the club. Defendant and Krol claimed that they worked for the Toy Chest and that the other group had not paid its bill. Weiler testified that she knew this was a lie because she knew all of the people who worked at the Toy Chest. When Weiler told the men she would not give them any money, the conversation grew heated and defendant repeatedly told Krol to punch Weiler, but Krol refused. The confrontation turned physical when defendant punched Weiler in the jaw. Defendant and Krol then squared off with Ruelas, Weiler, Lewis, and Spies. After a brief fracas, defendant and Krol fell to the ground, and Ruelas, Weiler, Spies, and Lewis ran away.

When the fight ended, defendant walked over to Krol to help him up, and he and Krol began to argue. Defendant punched Krol in the face two or three times, knocked him down, then reached into his pocket and continued punching Krol while he was on the ground. Defendant

-1-

stood over Krol, "just hitting him" and moving his hands in an "up and down motion" several times. Defendant also kicked Krol in the head two times. Ruelas, who had turned around, yelled for defendant to stop. Defendant left after a bouncer from the Toy Chest approached. Ruelas observed that Krol was covered in what appeared to be blood and that blood was "pooling" underneath him. Weiler observed cuts all over Krol's body. Police officers responding to the scene saw "multiple stab or slash wounds" on Krol's lower left back, left side, and left arm.

Defendant was arrested a short distance away following a traffic stop by Officers Daniel Ross and Nicholas Damphousse. The officers ordered defendant to come out of the vehicle with his hands above his head. Defendant was covered in what appeared to be blood. Officer Ross handcuffed defendant, but did not inform him of his *Miranda*[1] rights. Officer Ross began to search defendant for weapons, at which point defendant volunteered that "the knife is in my right pocket." Officer Ross did not immediately locate the weapon, so he asked, "are you sure you have a weapon on you[?]" Officer Ross explained that he did not want to turn defendant over to other officers if defendant was still armed. He was concerned that defendant, who had allegedly been involved in a stabbing, was still armed and that his search of defendant failed to reveal the hidden knife. In response, defendant told Officer Ross that "[i]f it's not in my pocket then it's in the car." Officer Damphousse looked inside the car and saw a knife in the passenger seat. The knife was in plain view and appeared to be covered in blood.

At trial, defendant objected to the admission of both of his statements to Officer Ross about the knife. The trial court ruled that the first statement—that the knife was located in defendant's pocket—was admissible because defendant volunteered the information without any questioning from Officer Ross. The trial court also explained, "clearly the public safety exception [to *Miranda*] applies there as well." With regard to the second statement, the trial court found that the public safety exception applied, given that defendant had already volunteered that he was armed with a knife and that Officer Ross was unable to locate the knife on defendant's person.

## II. DEFENDANT'S STATEMENTS ABOUT THE KNIFE

Defendant first argues that the trial court erred in admitting his statements to the police that he had a knife in his right pocket and that the knife was located in a car because the statements were made before the police officers informed defendant of his *Miranda* rights. We disagree.

An appellate court reviews a trial court's findings of fact with regard to a motion to suppress for clear error. *People v Elliott*, 494 Mich 292, 300; 833 NW2d 284 (2013). An issue of legal interpretation is reviewed de novo. *Id*. at 300-301. "Whether a court applied the correct constitutional standard is reviewed de novo." *Id*. at 301.

The United States and Michigan Constitutions provide a criminal defendant with a privilege against self-incrimination. *People v Cortez (On Remand)*, 299 Mich App 679, 691; 832

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

NW2d 1 (2013), citing US Const, Am V; Const 1963, art 1, § 17. When a criminal defendant undergoes custodial interrogation, the defendant must be warned that " 'he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.' " *Cortez (On Remand)*, 299 Mich App at 691, quoting *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966). This Court determines whether a defendant is in custody by examining the totality of the circumstances. *Cortez (On Remand)*, 299 Mich App at 691. This Court examines "whether a reasonable person in the defendant's situation would believe that he or she was free to leave," as well as "whether the relevant environment present[ed] the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id*. at 692 (citations and quotation marks omitted). Interrogation occurs when a defendant " 'is subjected to either express questioning or its functional equivalent.' " *People v White*, 493 Mich 187, 195; 828 NW2d 329 (2013), quoting *Rhode Island v Innis*, 446 US 291, 300-301; 100 S Ct 1682; 64 L Ed 2d 297 (1980). The term "functional equivalent" includes " 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.' " *White*, 493 Mich at 195, quoting *Innis*, 446 US at 301. In contrast, the admission of statements that did not come in response to police questioning, i.e., volunteered statements, does not violate the defendant's due process rights. *White*, 493 Mich at 194-195.

Courts have recognized that an exception exists to the rule from *Miranda* when there is an immediate concern for the safety of the public and police questioning is "objectively necessary" to ensure public safety. *People v Attebury*, 463 Mich 662, 670-671; 624 NW2d 912 (2001). The public safety exception also applies when there is an immediate concern for the safety of the police officers themselves. *Id*. at 671-672. However, the exception does not apply to questions that are "clearly investigatory." *Id.* at 671 (citation and quotation omitted). For example, in *Attebury*, the Michigan Supreme Court held that the public safety exception applied when the defendant began to search through his dresser drawers after the police officers allowed the defendant to dress before arresting him. *Id*. at 672-673. The Michigan Supreme Court held that a reasonable person would have felt threatened when the defendant began to look through his dresser. *Id*. at 672-673. The Michigan Supreme Court also emphasized that the police officers limited their questioning of the defendant to the location of a weapon. *Id*. at 673-674. Furthermore, the basis for the defendant's arrest was an incident in which the defendant threatened his wife with a gun, and the police offers knew that the defendant had been reported to have had homicidal and suicidal thoughts. *Id*. at 673-674. Therefore, the defendant's statements to the police regarding the location of a weapon were admissible at trial. *Id*. at 674.

Here, defendant was in custody when he made both statements regarding the location of the knife to Officer Ross. Defendant complied with Officer Ross's command to go down on his knees with his hands on top of his head. Officer Ross, who, along with Officer Damphousse, drew his weapon on defendant, then handcuffed defendant. A reasonable person in defendant's position would not have felt free to leave. See *Cortez (On Remand)*, 299 Mich App at 691-692.

Nevertheless, the trial court did not err in admitting defendant's first statement to the police regarding the fact that the knife was in his right pocket because defendant volunteered the statement without being interrogated by the officers. See *White*, 493 Mich at 193-195. Defendant made the statement while he was handcuffed, but before Officer Ross asked him any

-3-

questions regarding the location of the knife. Thus, defendant was not subjected to express questioning by Officer Ross. See *id*. at 195, 197-198. In addition, Officer Ross's conduct did not amount to the "functional equivalent" of express questioning because his search of defendant was attendant to defendant's arrest, and he did not have reason to know that searching defendant would cause defendant to say where the knife could be found. See *id*. at 202. Therefore, the trial court did not err in admitting defendant's first statement about the knife.

Although defendant made his second statement in response to Officer Ross's questioning, the trial court correctly ruled that the statement should not be suppressed because the second statement falls under the public safety exception to *Miranda*. Officer Ross's search of defendant and his question regarding the location of the knife were reasonably necessary to protect the officers and other members of the public from the potential dangers posed by the knife and defendant's possible possession thereof. Officer Ross and Officer Damphousse, who also participated in defendant's arrest, knew that defendant was a suspect in a stabbing that had occurred just moments before the arrest. Immediately after his arrest, defendant volunteered that he had a knife on his person. Even though he handcuffed defendant, Officer Ross feared injury to himself and anyone else who would encounter defendant because it was possible that defendant still possessed the knife used in the stabbing. Officer Ross's question regarding the location of the knife was reasonably necessary to protect himself, and those who might have encountered defendant after his arrest, from the inherent and immediate danger that defendant possessed a weapon. See *Attebury*, 463 Mich at 670-672. The question was not investigatory, as Officer Ross reasonably feared for his safety as well as for the safety of other officers who might have encountered a still-armed suspect. In addition, Officer Ross limited his question to the location of the knife and neutralizing the danger caused thereby. See *id*. at 674 (emphasizing that the officers' questioning was solely about neutralizing the danger and did not involve broader questions related to the investigation of the crime). Therefore, the trial court did not err in admitting both of defendant's statements to the police. See *id*.

## III. IMPROPER PROSECUTORIAL ARGUMENT

Defendant next argues the prosecutor's statement during his closing argument, that defendant reached into his pocket numerous times during the first fight, denied defendant of his rights to a fair trial, due process of the law, and confrontation of the witnesses against him. Specifically, defendant contends that the prosecutor committed misconduct by stating, in regard to the initial altercation with Weiler, Spies, Ruelas, and Lewis, that defendant "reached into his pocket numerous times throughout this fight, I guess in an attempt to even the odds" and that defendant had "bad intentions" and "malice in his mind." Defendant contends that the prosecutor's comment was improper because there is no evidence that he ever reached into his pockets during the initial altercation.

"In order to preserve a claim of prosecutorial misconduct for appellate review, a defendant must have timely and specifically objected below, unless objection could not have cured the error." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Defendant did not object to the prosecutor's statement in the trial court. Therefore, the issue is unpreserved. This Court reviews an unpreserved claim of prosecutorial misconduct "for plain error that affected the defendant's substantial rights." *People v Meissner*, 294 Mich App 438, 455; 812 NW2d 37 (2011). "Reversal is warranted only when plain error resulted in the conviction of an

actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. (citation and quotation omitted).

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014) (citation and quotation omitted). This Court considers the issue on a case-by-case basis and examines the prosecutor's statement in context to determine whether an error occurred. *Brown*, 294 Mich App at 382-383. "A prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence." *People v Unger*, 278 Mich App 210, 241; 749 NW2d 272 (2008). However, a prosecutor may argue any reasonable inference stemming from the evidence presented at trial. *People v Ackerman*, 257 Mich App 434, 450; 669 NW2d 818 (2003).

The prosecutor's argument was proper because the statement about defendant reaching into his pockets during the first altercation constituted a reasonable inference from the testimony presented at trial. Ruelas testified at trial that defendant attempted to reach inside his pocket during the fight. Ruelas stated that defendant "kept going for his pockets" during the initial altercation. The prosecutor's statement that defendant reached inside his pocket is a reasonable inference from Ruelas's testimony that defendant kept reaching inside or going for his pockets. See *Ackerman*, 257 Mich App at 450.

Furthermore, the prosecutor's remark did not affect defendant's substantial rights. The prosecutor made the statement in the context of describing defendant's initial altercation with Ruelas, Weiler, Spies, and Lewis. As defendant notes in his brief, the main dispute was whether defendant used a knife to injure Krol. There was testimony presented at trial that defendant reached into his pocket before punching or hitting Krol in the stomach. Defendant was found with a bloody knife in the front seat of his vehicle shortly after this incident. In addition, in a bench trial such as this one, the trial court is presumed to have known that the prosecutor's remarks during closing argument were not evidence. See *People v Lanzo Constr Co*, 272 Mich App 470, 484; 726 NW2d 746 (2006) ("In a bench trial, the trial court is presumed to know the applicable law."). Therefore, the prosecutor's statement did not amount to plain error affecting defendant's substantial rights. See *Meissner*, 294 Mich App at 455.

For the same reasons, we reject defendant's attendant claim that his trial counsel was ineffective for failing to object to the prosecutor's statements. "[T]rial counsel is not ineffective when failing to make objections that are lacking in merit." *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004).

## IV. DIRECTED VERDICT

Defendant next argues that the trial court erred in denying his motion for a directed verdict on the charge of assault with intent to commit murder because there was insufficient evidence presented at trial to establish beyond a reasonable doubt that he had the specific intent to kill Krol. We disagree.

This Court reviews a trial court's denial of a motion for a directed verdict de novo. *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001). This Court looks at the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find "that the essential elements of the crime charged were proved beyond a reasonable doubt." *Aldrich*, 246 Mich App at 122-123.

The elements of assault with intent to commit murder are "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014) (citation and quotation omitted). Assault with intent to commit murder is a specific intent crime. *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005). "[I]ntent may be inferred from circumstantial evidence." *Henderson*, 306 Mich App at 11. Circumstantial evidence includes the use of a deadly weapon to commit the assault. *Id*. "Minimal circumstantial evidence is sufficient to show an intent to kill, and that evidence can include a motive to kill, along with flight and lying, which may reflect a consciousness of guilt." *Id*.

The trial court did not err in denying defendant's motion for a directed verdict because there was sufficient evidence for the trial court to find that defendant intended to kill Krol. The violent manner in which defendant committed the assault shows that he intended to kill Krol. Defendant punched Krol two or three times in the face. He reached into his pocket and then hit Krol in the stomach. Defendant stabbed Krol approximately 14 times. He also kicked Krol in the head twice. When Ruelas approached Krol, he was covered in blood and was unable to breathe. He had cuts all over his body, and blood was pooling around him. Moreover, the fact that defendant used a deadly weapon—a knife—to assault Krol provides circumstantial evidence of defendant's intent to kill. Officer Damphousse recovered a "folding blade knife" with a 3-inch blade from the passenger side of the Jeep defendant was driving. The knife was covered in what appeared to be blood. Additionally, defendant fled the scene after a bouncer came out of the Toy Chest, which supports a finding that he had a guilty conscience. See *Henderson*, 306 Mich App at 11. Therefore, there was ample circumstantial evidence showing that defendant intended to kill Krol. See *id*.

Defendant argues that there was no evidence that he had a motive to kill Krol. However, the prosecution only needed to show minimal circumstantial evidence of defendant's intent to kill. See *id*. at 11. Whether defendant had a motive to kill Krol was only one factor in determining whether defendant intended to kill Krol. See *id*. Defendant also argues that he was unable to form the specific intent to kill Krol because he was intoxicated during the incident. Krol testified that he and defendant consumed a "six pack" of beer at Krol's house, drank a pitcher of beer at a restaurant, and drank again at a pub before the altercation. To the extent that Krol's testimony regarding the fact that he had been drinking with defendant establishes that defendant was intoxicated during the incident, voluntary intoxication does not negate defendant's specific intent. Voluntary intoxication is an affirmative defense to a specific intent crime only if the defendant establishes by a preponderance of the evidence "that he or she voluntarily consumed a legally obtained and properly used medication or other substance and did not know and reasonably should not have known that he or she would become intoxicated or impaired." MCL 768.37(2). Defendant fails to argue, let alone establish, that he did not know or reasonably should not have known that he would become intoxicated or impaired when he consumed alcohol with Krol. Therefore, defendant's argument fails. See MCL 768.37(2).

## V. SENTENCING

Defendant argues that the trial court erred in assessing 25 points for offense variable (OV) 3 because there was insufficient evidence that Krol suffered life threatening or permanent incapacitating injury. Defendant also argues that the trial court erred in assessing 25 points for OV 6 because the incident involved a combative situation, and defendant did not initiate the altercation with Krol. We disagree.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). A finding is clearly erroneous when this Court "is left with a definite and firm conviction that an error occurred." *People v Fawaz*, 299 Mich App 55, 60; 829 NW2d 259 (2012) (citation and quotation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

## A. OV 3

OV 3 addresses the physical injuries to the victim. *Fawaz*, 299 Mich App at 60. MCL 777.33(1) governs the scoring of OV 3 and provides, in part:

(a) A victim was killed ........................................................................... 100 points

(b) A victim was killed ........................................................................... 50 points

(c) Life threatening or permanent incapacitating injury occurred to a victim ............................................................................................................. 25 points

(d) Bodily injury requiring medical treatment occurred to a victim ............................................................................................................. 10 points

(e) Bodily injury not requiring medical treatment occurred to a victim ............................................................................................................. 5 points

(f) No physical injury occurred to a victim ............................................... 0 points

The prosecution does not need to present medical testimony to show that the victim suffered life threatening injuries. *People v McCuller*, 479 Mich 672, 697 n 19; 739 NW2d 563 (2007). Instead, the trial court can consider all evidence on the record, including trial testimony. See *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012).

In *People v Anderson*, 298 Mich App 178, 187-188; 825 NW2d 678 (2012), this Court upheld the trial court's score of OV 3 based on life threatening injuries where the victims suffered from observable burns covering their bodies and were still undergoing treatment for the burns at the time of trial. In *McCuller*, 479 Mich at 697, the Michigan Supreme Court noted that the trial court's assessment of 25 points for OV 3 "was based on uncontested factors and was supported by overwhelming evidence" when the evidence established that the victim lost

consciousness after being struck by the defendant, stayed in the hospital for ten days, lost several teeth, and "suffered a concussion, broken nose, broken cheek bone, broken eye socket, fractured skull, and collapsed right inner ear wall."

Although the victim need only suffer a permanent incapacitating injury *or* a life threatening injury, the trial court did not err in scoring OV 3 because the record evidence shows that Krol sustained *both* a permanent incapacitating injury *and* a life threatening injury. At sentencing, the trial court found, based on Krol's trial testimony, that Krol could not use his left hand.[2] Thus, Krol suffered an incapacitating injury that, per all accounts at trial, appeared to be permanent. Therefore, the trial court did not err by scoring OV 3. See MCL 777.33(1)(c) (authorizing a score of 25 points where the victim sustained a permanent incapacitating injury *or* a life threatening injury).

In addition, the trial court did not err by finding that Krol suffered a life threatening injury. Krol testified at trial that he was in a coma for ten days following the assault, which indicates that his life was threatened. See *McCuller*, 479 Mich at 697. Furthermore, Krol was stabbed 14 times, including in his left arm, his left side, his chest, and the area of his back underneath his shoulder blades. Krol was in the hospital for approximately two weeks, had several surgeries, and received numerous blood transfusions. He had a chest tube placed in his lung because his lung collapsed. He was also placed on a ventilator. Krol's liver was damaged from the stabbing as well. These severe injuries rose to the level of a life threatening injury. See *McCuller*, 479 Mich at 697; *Anderson*, 298 Mich App at 187-188; *Johnson*, 298 Mich App at 131 (noting that a trial court may consider all evidence on the record in calculating the sentencing guidelines). Therefore, the trial court properly assessed 25 points for OV 3. See MCL 777.33(1)(c).

## B. OV 6

OV 6 addresses a defendant's intent to kill or injure another person. See MCL 777.36(1); *People v Bowling*, 299 Mich App 552, 561; 830 NW2d 800 (2013). The trial court must score OV 6 when the offense is assault with intent to commit murder. MCL 777.22(1). MCL 777.36(1) governs the scoring of OV 6 and provides, in part:

> (a) The offender had premeditated intent to kill or the killing was committed while committing or attempting to commit arson, criminal sexual conduct in the first or third degree, child abuse in the first degree, a major controlled substance offense, robbery, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind, extortion, or kidnapping or the killing was the murder of a peace officer or a corrections officer ............................. 50 points

---

[2] Although Krol's medical records were admitted as evidence at trial, they were not provided to this Court. Regardless, the available record supports the trial court's factual findings by a preponderance of the evidence.

(b) The offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result ........................................... 25 points

(c) The offender had intent to injure or the killing was committed in an extreme emotional state caused by an adequate provocation and before a reasonable amount of time elapsed for the offender to calm or there was gross negligence amounting to an unreasonable disregard for life ..................................... 10 points

(d) The offender had no intent to kill or injure ......................................... 0 points

"The sentencing judge shall score this variable consistent with a jury verdict unless the judge has information that was not presented to the jury." MCL 777.36(2)(a). In addition, the trial court must assess ten points for OV 6 "if a killing is intentional within the definition of second degree murder or voluntary manslaughter, but the death occurred in a combative situation or in response to victimization of the offender by the decedent." MCL 777.36(2)(b).

The trial court properly assessed 25 points for OV 6. As noted, the trial court, in rendering its verdict, found that defendant had the specific intent to kill Krol. The trial court did not find that the intent to kill was premeditated. Thus, the trial court was required to assess 25 points for OV 6 in order to score OV 6 consistent its verdict. See MCL 777.36(2)(a). In addition, MCL 777.36(2)(b) does not apply in this situation. First, MCL 777.36(2)(b) applies when there is a death, since the statute refers to a "killing" and the "death" of a person. See MCL 777.36(2)(b). Second, there is no indication that the assault occurred in a combative situation. Instead, the testimony at trial established that defendant walked over to Krol after Ruelas, Weiler, Spies, and Lewis ran away, and helped Krol get up. Defendant and Krol started to talk or argue. Defendant punched Krol in the face two or three times, and Krol fell to the ground. Defendant punched Krol in the stomach and stabbed him several times. Defendant then kicked Krol in the head two times and ran away. There is no indication that Krol initiated or participated in the physical altercation. Therefore, the trial court did not err in assessing 25 points for OV 6.

Affirmed.

/s/ Jane M. Beckering
/s/ Kathleen Jansen
/s/ Mark T. Boonstra