# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 18, 2014

Plaintiff-Appellee,

v

No. 317382
Wayne Circuit Court
LC No. 12-003028-FC

NORWOOD WITHERSPOON, a/k/a NORMAN
WITHERSPOON,

Defendant-Appellant.

Before: MURRAY, P.J., and SAAD and HOEKSTRA, JJ.

PER CURIAM.

A jury convicted defendant, Norwood Witherspoon, of first-degree felony-murder, MCL 750.316(1)(b), and armed robbery, MCL 750.529. The trial court sentenced defendant to life imprisonment without parole for the felony-murder conviction and 60 to 80 years' imprisonment for the armed robbery conviction. Defendant appeals as of right. For the reasons explained below, we affirm.

Defendant's convictions arise from the January 18, 2012, shooting death of Hussan Hussein, an attendant at a gas station in the city of Highland Park, Michigan. The gas station attendant is separated from the public behind a partitioned area. The door that allows customers entry into the store is equipped with a locking mechanism that allows the attendant to "buzz" a customer into the store from behind the partition. It was the prosecutor's theory of the case that defendant entered the gas station, went to the beverage coolers, selected a juice, and deliberately broke the glass bottle on the floor. He then selected another juice, purchased it, and left the store. When defendant left the store, codefendant Brian Matthew Evans[1] placed a stick in the door to prevent it from locking. Hussein left the partitioned area to clean up the broken bottle when Evans entered with his face partially obscured. Evans shot the victim three times, twice in the legs and once in the chest. After the shooting, Evans gave his cellular telephone to his then-wife, Tanganyika Felton, who later gave it to the police. An analysis of defendant's and Evans's cellular telephones disclosed that the telephones placed calls to each other in the vicinity of the

---

[1] Defendant and codefendant Evans were tried jointly, before separate juries. Evans was also convicted and his appeal in Docket No. 317577 has been submitted together with this appeal.

-1-

gas station at the time of the shooting. Additionally, both men were identified on the station's video surveillance recording by their respective parole officers. Defendant admitted to his parole officer that he had visited the gas station, but denied any involvement in the crimes.

Defendant was convicted following a jury trial and the trial court sentenced defendant as noted above. Defendant now appeals as of right.

## I. *BRADY* VIOLATION

Defendant first argues that the prosecutor committed a *Brady*[2] violation by failing to supply defendant with the investigative subpoena testimony of Tanganyika Felton before the preliminary examination, thereby limiting the opportunity for impeachment of her preliminary examination testimony.[3] Because defendant did not raise a *Brady* violation in the trial court, this issue is unpreserved. Claims of unpreserved constitutional error are reviewed for plain error affecting substantial rights. *People v Shafier*, 483 Mich 205, 211; 768 NW2d 305 (2009); *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v McCuller*, 479 Mich 672, 695; 739 NW2d 563 (2007) (citation and punctuation omitted). Defendant bears the burden of demonstrating a plain error. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003).

"Due process requires the prosecution to disclose evidence in its possession that is exculpatory and material, regardless of whether the defendant requests the disclosure." *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007). The suppression of evidence favorable to the defendant violates due process when material to guilt or punishment regardless of whether the prosecutor acted in good or bad faith. *Brady*, 373 US at 87. A *Brady* violation is comprised of three components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v Greene*, 527 US 263, 281-282; 119 S Ct 1936; 144 L Ed 2d 286 (1999).

Stated otherwise, a *Brady* violation occurs when: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). Relevant to these factors, the prosecutor is responsible for evidence within its control, even if unknown to the prosecution, because it has a duty to learn of favorable evidence acquired by those acting on the government's behalf, including the police. *Id*. at 150, 153-154. Evidence is considered favorable to the defense when it is either

---

[2] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

[3] Felton was declared an unavailable witness at trial, so the trial court permitted the prosecution to introduce a portion of her preliminary examination testimony at trial. See MRE 804(b)(1). The most damaging portions of Felton's testimony—namely, Evans's confession to Felton—were not, however, introduced before defendant's jury.

exculpatory or impeaching. *Id*. at 150. "To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* (citation omitted). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* (citation omitted). The defendant bears the burden of establishing a *Brady* violation. See *Schumacher*, 276 Mich App at 177.

In this case, defendant does not contend that the prosecution entirely withheld evidence; rather, defendant asserts a *Brady* violation occurred because, although the prosecution provided defendant with the evidence in question in time for his use at trial, the prosecution failed to provide the investigative subpoena testimony of Evans's then-wife, Felton, to the defense before the preliminary examination. In other words, defendant complains about a delayed disclosure of evidence, not a total deprivation of that evidence. "If previously undisclosed evidence is disclosed, as here, during trial, no *Brady* violation occurs unless the defendant has been prejudiced by the delay in disclosure." *United States v Word*, 806 F2d 658, 665 (CA 6 1986). See also *United States v Davis*, 306 F3d 398, 421 (CA 6 2002).

> To establish prejudice, "a defendant must show what he would have done differently had he been given more time to address the *Brady* evidence, and specifically how, had the evidence been given to the defendant earlier, a reasonable probability exists that the result of the defendant's trial would have been different." [*United States v Fields*, 763 F3d 443, 459 (CA 6 2014) (citation omitted).]

In this case, even assuming that the prosecution should have disclosed Felton's testimony from the investigative subpoena before the preliminary examination, defendant is unable to establish that he was prejudiced by any violation. Defendant argues that the prosecution's failure to disclose the testimony precluded him from impeaching Felton's preliminary examination testimony with alleged discrepancies in her investigative subpoena testimony. However, although defendant broadly asserts that Felton's testimony pursuant to the investigative subpoena differed from Felton's testimony at the preliminary examination, he fails to identify any particular disparities between the two or to explain in any detail how he would have used the investigative subpoena as impeachment evidence. In such circumstances, defendant has not shown a reasonable probability that, had the evidence been disclosed to the defense before the preliminary examination, the result of the proceedings would have been different. See *Chenault*, 495 Mich at 150; *Fields*, 763 F3d at 459.

Moreover, at trial, the prosecutor offered to stipulate to the admission of Felton's investigative subpoena testimony and to allow defense counsel to "recite each inconsistency to the jury," and the trial court indicated it was willing to permit the admission of inconsistent statements defendant might want to introduce. Curiously, defendant declined this offer. In sum, the prosecutor offered to stipulate to a course of action to remove any perceived prejudice to the defense resulting from the alleged failure to provide the investigative subpoena testimony before the preliminary examination and the unavailability of Felton at trial, but defendant did not accept this offer. Where measures are available "to remedy a delayed *Brady* disclosure, but the defendant refuses to take advantage of those remedies, the defendant cannot reasonably claim prejudice as a result of that choice." *United States v Spry*, 238 Fed App'x 142, 149 (CA 6 2007).

-3-

See also *Chenault*, 495 Mich at 155 n 7 ("[W]hen the government complies with its obligation to provide favorable and material evidence, it becomes the defendant's burden to then make use of that evidence."). Indeed, more generally, an appellant may not benefit from an alleged error to which he contributed by plan or negligence. *People v Witherspoon (After Remand)*, 257 Mich App 329, 333; 670 NW2d 434 (2003). Accordingly, we reject this claim of error.

## II. SPEEDY TRIAL

Next, defendant argues that his constitutional right to a speedy trial was violated by the delay of approximately 16 months between the time of his arrest and his trial. Defendant preserved this issue by making a formal demand on the record on April 22, 2013. *People v Cain*, 238 Mich App 95, 111; 605 NW2d 28 (1999). Whether a defendant was denied a speedy trial presents a mixed question of fact and law. *People v Waclawski*, 286 Mich App 634, 664; 780 NW2d 321 (2009). The trial court's factual findings are reviewed for clear error, but the constitutional issue presents a question of law subject to review de novo. *Id*.

Both the United States Constitution and the Michigan Constitution guarantee a criminal defendant the right to a speedy trial. US Const, Am VI; Const 1963, art 1, § 20. The right is enforced by statute, MCL 768.1, and by court rule, MCR 6.004(A). *People v Cleveland Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). To determine whether a defendant was denied the right to a speedy trial, four factors must be balanced: "(1) the length of delay, (2) the reason for delay; (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Id*. at 261-262. The time for assessing whether the right to a speedy trial was violated commences at the date of the defendant's arrest. *People v Rivera*, 301 Mich App 188, 193; 835 NW2d 464 (2013). When, as in this case, the delay is less than 18 months, the defendant bears the burden of proving prejudice. *Id*.

A defendant may experience two types of prejudice, prejudice to the person and prejudice to his defense. *Cain*, 238 Mich App at 114. Prejudice to the person occurs when oppressive pretrial incarceration leads to anxiety and concern. *People v Collins*, 388 Mich 680, 694; 202 NW2d 769 (1972). However, anxiety alone is insufficient to support a violation of the defendant's right to a speedy trial. *People v Gilmore*, 222 Mich App 442, 462; 564 NW2d 158 (1997). Prejudice to the defense occurs when the defendant is unable to adequately prepare his case, for example, when key witnesses become unavailable, skewing the fairness of the system. *Collins*, 388 Mich at 694. A defendant may not be entitled to the safeguards of the right to a speedy trial for a delay for which he is responsible or shares responsibility. *Collins*, *Id*. Delays inherent in the court system, such as docket congestion and scheduling, are technically attributable to the prosecution, but are "given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *People v Wickham*, 200 Mich App 106, 111; 503 NW2d 701 (1993). Unlike the 180-day rule, MCL 780.131, a speedy trial violation does not occur after the passage of a fixed number of days. See *People v McLaughlin*, 258 Mich App 635, 644; 672 NW2d 860 (2003).

Defendant was arrested on January 19, 2012, and his trial began on May 28, 2013. Thus, the length of the delay is approximately 16 months, and it is defendant's burden to establish prejudice. The reasons for the delay included docketing issues because of the retirement of the original trial judge and the transfer of the case to another judge, the attorneys' unavailability

-4-

because of other trials, the unavailability of a prosecution witness, and Evans's dismissal of trial counsel on multiple occasions. These docketing and scheduling delays, although attributed to the prosecutor, are given only a neutral tint. There is no indication that the prosecutor deliberately delayed the trial to obtain any type of advantage or to cause prejudice to defendant. In terms of defendant's assertion of his right to a speedy trial, defendant agreed to the initial adjournment on June 27, 2012, and on September 14, 2012, though defendant objected to further adjournment, he acknowledged that there was "good cause to adjourn." Defendant again objected to an adjournment on January 15, 2013, but did not specifically assert a speedy trial violation until April 22, 2013. Defendant's trial began little more than a month after defendant formally raised his claim of a right to a speedy trial. Cf. *Cain*, 238 Mich App at 113-114.

Regarding prejudice, on appeal, defendant asserts that he suffered prejudice because he was incarcerated in prison, instead of the local jail, making it difficult to communicate with trial counsel. However, defendant was incarcerated before trial because of a parole violation, meaning any difficulty attributable to the distance caused by his imprisonment was not caused by the delay. Moreover, incarceration alone, without prejudice to a defendant's defense, is not sufficient to establish prejudice. *Cleveland Williams*, 475 Mich at 264. The only prejudice defendant alleges to his defense is that the delay prevented him from presenting an alibi defense with his father as a key witness. This claim of prejudice lacks merit, however, given that defendant never filed a notice of alibi and it is difficult to determine how defendant's father could have provided an alibi defense when defendant telephoned his parole officer and admitted purchasing a juice in the gas station just before the shooting. Defendant has also failed to support his claim of prejudice with record evidence. See *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). Overall, there is no indication that defendant suffered any prejudice, either to his person or to his defense, as a result of the delay.

After balancing the relevant factors, we agree with the trial court that defendant failed to demonstrate that his right to a speedy trial was violated.

III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant asserts that trial counsel was ineffective for failing to object to evidence that defendant was on parole at the time of the instant offense.

Because defendant did not raise an ineffective assistance of counsel claim in the trial court, our review of this issue is limited to mistakes apparent on the record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). "Whether a defendant received ineffective assistance of trial counsel presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). To establish a claim of ineffective assistance of counsel, a defendant must demonstrate (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there exists a reasonable probability that absent counsel's errors, the result of the proceeding would have been different. *People v Lopez*, 305 Mich App 686, 694; 854 NW2d 205 (2014). "There is a presumption that defense counsel was effective, and a defendant must overcome the strong presumption that counsel's performance was sound trial strategy." *People v Johnson*, 293 Mich App 79, 90; 808 NW2d 815 (2011).

The claim that trial counsel was ineffective is premised on counsel's failure to object to evidence that defendant was on parole. Defendant contends that evidence of his parole status at the time of the shooting was prejudicial and inadmissible under MRE 404(b)(1), which prohibits evidence of a defendant's prior bad acts to prove a defendant's character or propensity to commit the charged crime. Defendant thus contends that counsel performed below an objective level of reasonableness by failing to object to evidence of his parole status based on MRE 404(b)(1).

Pursuant to MRE 404(b)(1), while evidence of other crimes is not admissible as propensity evidence, it may be admissible for other purposes, including "proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident . . . ." MRE 404(b)(1). This list of purposes is not exhaustive. *People v Watson*, 245 Mich App 572, 577; 629 NW2d 411 (2001). To introduce evidence under MRE 404(b)(1):

> First, the prosecutor must offer the "prior bad acts" evidence under something other than a character or propensity theory. Second, "the evidence must be relevant under MRE 402, as enforced through MRE 104(b) . . . . Third, the probative value of the evidence must not be substantially outweighed by unfair prejudice under MRE 403. Finally, the trial court, upon request, may provide a limiting instruction under MRE 105. [*People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004).]

In this case, contrary to defendant's argument on appeal, the evidence of his parole status was relevant to establishing defendant's identity as a participant in the charged crime, which was an issue in the case. The prosecutor was required to prove defendant's identity as a perpetrator beyond a reasonable doubt. *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976); *People v Kern*, 6 Mich App 406, 409; 149 NW2d 216 (1967). The testimony of defendant's parole officer was relevant to introduce defendant's admission to his presence at the gas station and to identify defendant as a participant in the crimes. Deloris Woods had served as defendant's parole officer since August 2011, and he reported to her twice monthly. After the offense, defendant telephoned Woods and admitted to being at the gas station near the time of the shooting. Defendant's parole status was necessary to explain why defendant felt it necessary to make admissions to Woods, and to explain how Woods knew defendant and could identify him on the video surveillance and still photographs as the person leaving the gas station in proximity to the time of the shooting. In short, the evidence was relevant and offered for a non-propensity purpose. See *Knox*, 469 Mich at 509.

Regarding potential prejudice, there is no indication that the prosecutor sought to introduce Woods's relationship as defendant's parole officer to prejudice the defense. Notably, while the basic fact of defendant's parole status was placed before the jury, the nature of defendant's prior criminal record was not introduced and certain witnesses were admonished in advance of their testimony to avoid providing any unnecessary, inappropriate testimony regarding defendant's criminal history. The trial court further mitigated any potential prejudice by exploring this issue with the jury during voir dire and by instructing the jury before its deliberations that, when making their decision, they could not consider the fact that defendant was on parole at the time of the alleged offense. See *People v Orr*, 275 Mich App 587, 593; 739 NW2d 385 (2007). On this record, evidence of defendant's parole status was not barred by MRE

-6-

404(b)(1), and counsel cannot be considered ineffective for failing to offer a futile objection to the evidence's admission. See *People v Moorer*, 262 Mich App 64, 76; 683 NW2d 736 (2004).

Furthermore, it is apparent from the record that defense counsel was aware before trial that evidence of defendant's parole status would be admitted at trial and took steps to utilize evidence of defendant's parole status as a matter of trial strategy. For example, during trial, defendant's wife testified, in response to questioning from defense counsel, regarding defendant's release from the Department of Corrections, his meetings with his parole officer in Pontiac, and his parents providing transportation to the meetings because defendant did not have a license. Counsel used the evidence regarding defendant's compliance with his parole and his decision to immediately contact his parole officer after learning that he was a suspect in the offense to support the defense theory that defendant was innocent. Counsel argued that if defendant had any involvement in the shooting, he would have fled the jurisdiction and not contacted his parole officer. "[D]ecisions regarding what evidence to present and which witnesses to call are presumed to be matters of trial strategy, and we will not second-guess strategic decisions with the benefit of hindsight." *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013). "The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996).

In sum, the record discloses that defendant's parole status was admissible for limited, relevant purposes, and the prosecutor did not seek to introduce evidence of defendant's criminal history beyond those limited permissible purposes. It is also apparent that steps were taken to minimize any potential for unfair prejudice by ensuring that the nature of defendant's prior criminal record was not disclosed, by having the trial court explore this issue during jury voir dire to make sure that such evidence would not prevent a juror from being fair and impartial, and by ensuring that certain witnesses were admonished not to provide specific inappropriate testimony. Considering that evidence of defendant's parole status was already properly before the jury, it was not improper for defense counsel to reference that defendant had a criminal history in his examination of defendant's wife, or in using the evidence of defendant's parole status and his communications with his parole officer to support the argument that defendant's activity at the gas station was innocent conduct. Under the circumstances, defendant has not overcome the presumption that defense counsel's failure to object and counsel's affirmative use of this evidence was sound strategy. Therefore, this claim of error is without merit.

## IV. PROSECUTORIAL MISCONDUCT

Defendant alleges that the prosecutor engaged in misconduct by referencing the victim's family and attempting to elicit sympathy from the jury. Defendant concedes that there were no objections to the prosecutor's remarks, leaving this issue unpreserved. *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). We review unpreserved claims of prosecutorial misconduct for plain error affecting defendant's substantial rights. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). Error requiring reversal will not be found when a curative instruction could have displaced any prejudicial effect of the prosecutor's improper argument. *People v Johnigan*, 265 Mich App 463, 467; 696 NW2d 724 (2005).

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Mesik (On Reconsideration)*, 285 Mich App 535, 541; 775 NW2d 857 (2009). Questions of prosecutorial misconduct are decided on a case-by-case basis, and the prosecutor's remarks must be evaluated in context. *Roscoe*, 303 Mich App at 648. "Prosecutors have discretion on how to argue the facts and reasonable inferences arising therefrom, and are not limited to presenting their arguments in the blandest terms possible." *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011). Further, the prosecutor's comments must be analyzed in light of the arguments raised by the defense and the relationship of the comments to the evidence admitted at trial. *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007).

It is improper, however, for the prosecutor to appeal to the jury to sympathize with a victim or the victim's family. *People v Abraham*, 256 Mich App 265, 273; 662 NW2d 836 (2003); *People v Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001). For example, in *People v Dalessandro*, 165 Mich App 569, 580-581; 419 NW2d 609 (1988), this Court concluded that a new trial was warranted, in part, because the prosecutor repeatedly referred to the victim as a "poor innocent baby." *Id*. at 581. Although the prosecutor never expressly stated that the jury should sympathize with the victim, "the prosecutor's statements were obviously intended to elicit just that emotional response." *Id*.

In the present case, the prosecutor began his opening statement by stating:

This case is about a man named Hussan Hussein. He was 59-years-old. He worked at Chrysler for 35 years. He retired.

He took a job conducting the midnight shift at the [gas station], to help his daughters go to school.

He had children, daughters. He had grandchildren.

In response to questions by the prosecutor, the victim's daughter corroborated these opening remarks in her testimony by detailing Hussein's work history, his familial relationships, and his work at the gas station, following his retirement from Chrysler, in order to support his children through school.

We note at the outset that we view with disfavor much of the prosecutor's commentary on the victim's personal life and the prosecutor's efforts to introduce evidence on this point. While a certain amount of basic biographical information may aid the jury's general understanding of the case, certain aspects of the victim's life had no relevance to the present case. That is, it was immaterial that Hussein retired from Chrysler after 35 years, that he worked the midnight shift at the gas station in order to put his children through school, or that he left behind four children and 10 grandchildren. We can discern no reason for the prosecutor's introduction of this evidence other than to elicit an emotional response from the jury and to arouse sympathy for the victim. The prosecutor would do well, however, to remember that his "role within our judicial system is to seek justice and not merely to convict." *Meissner*, 294 Mich App at 455. He may litigate tenaciously and "strike hard blows," but he "is not at liberty to strike foul ones." *People v Blackmon*, 280 Mich App 253, 268; 761 NW2d 172 (2008), quoting *Berger v United States*, 295 US 78, 88; 55 S Ct 629; 79 L Ed 1314 (1935). Appeals to the jury to

sympathize with the victim are among those improper arguments, or foul blows, which a prosecutor may not make. See *Abraham*, 256 Mich App at 273. Consequently, to the extent the prosecution did so through references to extraneous facts regarding Hussein's personal life or through the prosecution's introduction of testimony on this point, such conduct by the prosecutor was improper.

Nonetheless, though some of the prosecutor's remarks were better left unsaid, and some of the evidence improperly solicited, in the context of the entire trial, these relatively short references to Hussein's personal life were not so inflammatory as to prejudice defendant. Cf. *People v Mayhew*, 236 Mich App 112, 122-123; 600 NW2d 370 (1999) (finding conduct was not so inflammatory as to prejudice defendant where prosecutor commented in opening statement that the decedent's wife had lost "both a husband and a friend"). As noted, to a certain extent, basic background information could be introduced to aid the jury's understanding of the case. See 1 Robinson & Longhofer, Michigan Court Rules Practice, Evidence, § 401.2, p. 227. The prosecution did not blatantly use the information about the victim to appeal to the jury's sympathy, and the remarks were, all things considered, fairly isolated. Cf. *Watson*, 245 Mich App at 591. Moreover, ultimately, any potential prejudice caused by the prosecution's conduct could have been cured with a timely request for a curative instruction. *Johnigan*, 265 Mich App at 467. The jury was in fact instructed that it could not let sympathy influence its decision, and the jury is presumed to follow its instructions. See *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004); *Mayhew*, 236 Mich App at 123 n 5. On these facts, the prosecutor's conduct did not deprive defendant a fair and impartial trial, and he has not established plain error affecting his substantial rights.

## V. GREAT WEIGHT OF THE EVIDENCE

Defendant next argues that reversal is required because the jury's verdict is not supported by the great weight of the evidence. In particular, defendant asserts on appeal that he was merely present at the gas station immediately prior to the robbery and murder, and that no evidence shows he planned or participated in the offenses in question.

To preserve a challenge to the great weight of the evidence, the defendant must move for a new trial in the trial court. *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). Defendant did not file a motion for new trial in the lower court; therefore, this issue is unpreserved. An unpreserved challenge to the great weight of the evidence is reviewed for plain error affecting the defendant's substantial rights. *Id*. at 617-618.

Defendant's convictions for armed robbery and felony-murder were premised on an aiding and abetting theory. The aiding and abetting statute, MCL 767.39, provides:

> Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

In other words, a person who aids or abets the commission of a crime may be convicted as if he or she directly committed the offense. *People v Jackson*, 292 Mich App 583, 589; 808 NW2d

541 (2011). "Aiding and abetting describes all forms of assistance rendered to the perpetrator, including any words or deeds that may support, encourage, or incite the commission of a crime." *Id.*

> The general rule is that, to convict a defendant of aiding and abetting a crime, a prosecutor must establish that "(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement." [*People v Moore*, 470 Mich 56, 67-68; 679 NW2d 41 (2004), quoting *Carines*, 460 Mich at 768.]

Under an aiding and abetting theory, "a defendant is liable for the crime the defendant intends to aid and abet as well as the natural and probable consequences of that crime." *People v Robinson*, 475 Mich 1, 14-15; 715 NW2d 44 (2006).

The elements of first-degree felony murder are: (1) the killing of a human being, (2) with malice, i.e., the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit or assisting in the commission of any of the felonies delineated in MCL 750.316(1)(b). *People v Bobby Smith*, 478 Mich 292, 318-319; 733 NW2d 351 (2007); *Carines*, 460 Mich at 758-759. Robbery is one of the felonies delineated in MCL 750.316(1)(b). When aiding and abetting felony murder, the defendant must have the requisite malice to be convicted of felony murder, but need not have the same malice as the principal. *Robinson*, 475 Mich at 14.

> To prove felony murder on an aiding and abetting theory, the prosecution must show that the defendant (1) performed acts or gave encouragement that assisted the commission of the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of the predicate felony. [*People v Riley (After Remand)*, 468 Mich 135, 140; 659 NW2d 611 (2003).]

Malice may be inferred from the facts and circumstances, and, in particular, a "jury may infer malice from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm." *Carines*, 460 Mich at 759. See also *People v Aaron*, 409 Mich 672, 729-730; 299 NW2d 304 (1980) ("[W]henever a killing occurs in the perpetration or attempted perpetration of an inherently dangerous felony . . . the jury may consider the 'nature of the underlying felony and the circumstances surrounding its commission.'"). When the aider and abettor participates in the crime with knowledge of the principal's intent to kill or cause great bodily harm, there is sufficient evidence of malice because the aider and abettor is acting with wanton and willful disregard. *People v Kelly*, 423 Mich 261, 278-279; 378 NW2d 365 (1985). Because of the difficulty inherent in proving an actor's state of mind, "minimal circumstantial

evidence will suffice to establish the defendant's state of mind." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

In this case, the evidence showed that defendant entered the gas station without any attempt to disguise his appearance. He entered the station, dropped a glass bottle, and purchased a second glass bottle. When defendant exited the store, an arm appeared to place an obstruction in the door to prevent its closure. A person identified as codefendant Evans then entered the store. Cellular telephone data indicated a series of telephone calls between defendant's telephone and Evans's telephone before, during, and after the commission of the crime, including a call received by defendant's telephone at 2:53 a.m., which lasted for 12 minutes and 3 seconds, during which defendant was on video in the gas station for part of the time but did not appear to be speaking on the telephone. After the incident, contrary to clear evidence demonstrating that defendant knew Evans, defendant denied involvement in the crimes and indicated that he saw someone outside the store but that he did not know the person. See *People v Unger*, 278 Mich App 210, 227; 749 NW2d 272 (2008) ("A jury may infer consciousness of guilt from evidence of lying or deception.").

Given the evidence presented in this case, reasonable inferences support the prosecutor's theory that defendant and Evans were working together, that the glass bottle was deliberately broken to lure the victim out of the protected area, that defendant used his cellular telephone as a microphone to allow Evans to hear what was transpiring in the gas station, and that the obstruction was placed in the door as defendant exited in order to allow Evans to enter the gas station without the victim's knowledge to commit a robbery. Under an aiding and abetting theory, "a defendant is liable for the crime the defendant intends to aid and abet as well as the natural and probable consequences of that crime." *Robinson*, 475 Mich at 14-15. In light of the facts and reasonable inferences arising from those facts, defendant participated in a ruse designed to lure the victim from the safety of the protected area in order to rob the victim, and defendant is liable for the natural and probable consequences of the planned robbery, including, in this case, the victim's death. The evidence does not preponderate so heavily against the jury's verdict that it would be a miscarriage of justice to allow the verdict to stand. Accordingly, there is no plain error.

## VI. ADMISSION OF PHOTOGRAPHS

Lastly, defendant argues that the trial court abused its discretion by admitting photographs of the victim, specifically photographs of the victim lying on the ground at the scene of the crime, which defendant contends were designed solely to arouse the sympathies of the jury. Defendant further contends that photographs taken from Evans's cellular telephone, which showed defendant holding money, should not have been admitted.

"A decision whether to admit photographs is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." *People v Gayheart*, 285 Mich App 202, 227; 776 NW2d 330 (2009). The admission of gruesome photographs offered solely to arouse the sympathies or prejudices of the jurors may be error requiring reversal. *People v Ho*, 231 Mich App 178, 188; 585 NW2d 357 (1998). When a photograph is admitted for an otherwise proper purpose, it is not inadmissible simply because of its gruesome nature or the shocking details of the crime. See *id*. Photographs will not be excluded simply because a

witness can testify regarding the information contained in the photographs, and gruesomeness alone will not cause exclusion. *People v Mills*, 450 Mich 61, 76; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). Photographs that illustrate the nature and extent of the victim's injuries are relevant to establish intent. See *id*. at 71. The jury is entitled to see the severity and extent of the injuries without relying solely upon expert testimony. *Gayheart*, 285 Mich App at 227.

> When a photograph is offered the tendency of which may be to prejudice the jury, its admissibility lies in the sound discretion of the court. It may be admitted if its value as evidence outweighs its possible prejudicial effect, or [it] may be excluded if its prejudicial effect may well outweigh[] its probative value. [*People v Eddington*, 387 Mich 551, 563; 198 NW2d 297 (1972) (quotation omitted).]

In the present case, initially, we note that Dr. Schmidt, the medical examiner, testified that photographs depicting the victim's injuries were taken during the autopsy and those photographs were admitted as exhibit 41 *without objection by defendant*.

Under the circumstances of this case, the admission of the additional photographs showing the victim at the scene of the crime did not constitute an abuse of discretion. *Mills*, 450 Mich at 76; *Gayheart*, 285 Mich App at 227. Given the admission of the autopsy photographs without objection from defendant, introduction of additional photographs depicting the victim's injuries was largely cumulative, and generally the admission of mere cumulative evidence is not prejudicial. *People v Rodriquez (On Remand)*, 216 Mich App 329, 332; 549 NW2d 359 (1996). Moreover, the photographs at the scene of the crime depicted the corpus delicti, the proof and criminal agency of death, *People v McMahan*, 451 Mich 543, 549; 548 NW2d 199 (1996); *Eddington*, 387 Mich at 561-562, and the jury was entitled to view the severity of the injuries, *Gayheart*, 285 Mich App at 227. The photographs were relevant, and the probative value did not outweigh the danger of unfair prejudice because gruesomeness alone will not cause exclusion. *Id*. at 227-228.

Defendant further posits that it was improper to admit two photographs of himself, which were found on Evans's cellular phone. In particular, defendant contends that it was improper to admit a photograph that showed him fanning money. At trial, defendant objected to the admission of this photograph and asserted that it was offensive because of the money. The trial court overruled the objection, concluding that it was not more prejudicial than probative.

The photographs of defendant on Evans's phone were relevant under MRE 401 to show defendant's association with Evans, the alleged shooter. Given the defense theory that defendant was merely present and was not involved in committing the crime with Evans, the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice under MRE 403. Defendant telephoned Woods, his parole officer, after he learned that video surveillance recorded the faces of the alleged perpetrator or perpetrators. Defendant volunteered to Woods that he was in the store, bought a juice, the juice broke, and he left. After he left, defendant reported that he saw someone outside the store, but he did not know the person. The photographs of defendant on Evans's telephone refuted defendant's claim that he did not know the person outside the store. Although defendant argues that it was not necessary to submit the photograph with defendant fanning money, that photograph was probative of the nature of

defendant's relationship with Evans and the jury was advised that the photograph was taken months before the robbery, thereby precluding any potential for unfair prejudice if the jury were to equate the photograph with the armed robbery of the victim at the gas station. The trial court did not abuse its discretion by admitting the photograph at trial.

Affirmed.

/s/ Christopher M. Murray
/s/ Henry William Saad
/s/ Joel P. Hoekstra